CHRISTIAN J. MEGERLE v. RICHARD P. ASHE, THOMAS VANSYCLE, AND LUTHER FLANDERS.

TITLE BY PRE-EMPTION.—One having a title to land by a patent from the United States, which he claims extends by relation back of the date of the patent, and had its inception in a pre-emption right, cannot show title back of the patent as against another also claiming under the United States, but by a different process, unless at the time he filed his declaratory statement as a pre-emptioner the plat of the survey of the land had been filed in the local Land Office, and approved by the Surveyor General.

FACTS RECITED IN OPINION OF THE SECRETARY OF THE INTERIOR NOT EVIDENCE.— The recital, in an opinion of the Secretary of the Interior, given in a contest as to a pre-emption right, of the facts upon which the right to a pre-emption was based, is not evidence of the facts recited.

FILING PLAT OF SURVEY IN LOCAL LAND OFFICE.—If the statement shows that the only evidence introduced of the filing of the plat of survey in the local Land Office was an indorsement on the same of the day of filing, which is not signed by the Register, the day named will be taken on that appeal as fixing the time.

TIME OF FILING PRE-EMPTION CLAIM.—Courts have no power to dispense with the requirement of the Act of Congress that pre-emptioners must file their declaratory statements within three months after the return of the plat to the Land Office.

DECISION OF SECRETARY OF THE INTERIOR AS AN ESTOPPEL.—The decision of the Secretary of the Interior, that a pre-emption claim is valid, is not an estoppel as to one who contested the same, not as a pre-emption claimant, but claimed under an Act of Congress donating land to a State, even if binding upon contesting claimants of the right to a pre-emption.

ESTOPPEL.—A party cannot rely upon a judicial determination of an issue by way

Statement of Facts.

of estoppel, and also upon proof of the facts upon which the determination is based.

EVIDENCE AS TO FACTS ON WHICH ESTOPPEL IS BASED.—If the party entitled to set up an estoppel introduces evidence as to the truth of the matters upon which the decision constituting the estoppel was rendered, the other party may pursue the inquiry without regard to the estoppel.

EVIDENCE CONTRADICTING A PATENT.—Evidence tending to show that a patentee had acquired a pre-emption right, and that the patent was issued in confirmation of such right, does not tend to contradict the patent when the patent does not recite that it was executed for lands to which the patentee held a right of pre-emption.

PROOF OF PRE-EMPTION RIGHT.—One claiming a right of pre-emption to land must prove the existence of the state of facts which the law requires to give him a pre-emption right to the premises, and may go behind his patent for this purpose.

IDEM.—The fact that a pre-emption claim was made should be proved by documentary evidence; but the facts upon which the claim rests cannot be proved, as against a person claiming under the United States by another title, by recitals in opinions of the Commissioner of the General Land Office, or the Secretary of the Interior.

FACTS FOR THE JURY.—The existence of the conditions making one a pre-emptioner and the performance of the acts necessary to give a right of pre-emption, are facts for the jury to find from the evidence, and not for the Court to determine.

APPEAL from the District Court, Fifth Judicial District, San Joaquin County.

The general facts out of which this controversy arose will be found fully stated in the case of *Terry* v. *Megerle*, 24 Cal. 609, and *Megerle* v. *Ashe*, 27 Cal. 322.

Terry is the grantor of Ashe, and the other defendants are cotenants of Ashe. This action was commenced January 13th, 1864, to recover possession of the Northwest Quarter of Section Twenty-one, in Township Four North, Range Eight East, Mount Diablo Meridian. In 1852 and 1853 Terry and Megerle were both living on the land, and had inclosed and were cultivating separate portions thereof. On the fourteenth of May, 1856, Terry located a State school land warrant on this quarter and two adjoining quarters, and obtained a patent from the State dated the eighth day of January, 1862. Terry, claiming under this patent, brought the action the report of which is found in 24 Cal. 609, to recover possession of that part of the quarter section in the possession of defendant. The defendant claimed that he had

resided on the land with intention to pre-empt the same, and that his right as a pre-emptioner had accrued before Terry's location of the school land warrant. Terry contested Megerle's right to a pre-emption before the Register and Receiver of the State Land Office at Stockton, on the ground that the title had passed to him from the United States through the State, and obtained a decision against the right of Megerle to a pre-emption. On the twenty-third day of October, 1858, Megerle appealed to the Commissioner of the General Land Office. The Commissioner reversed the decision of the Register and Receiver, and instructed them to allow Megerle to complete his entry as a pre-emptioner, upon his showing a compliance with the provisions of the pre-emption law. An appeal was taken to the Secretary of the Interior, who affirmed the decision of the Commissioner. Megerle then completed his entry, and obtained a patent from the United States dated September 1st, 1863.

On the trial below the attorneys for Megerle first introduced in evidence the patent from the United States. They then introduced a memorandum of the minutes of the proceedings in the contest before the Register and Receiver in 1858, the opinion of those officers rejecting the pre-emption claim, the opinion of the Commissioner of the General Land Office allowing the pre-emption, and the opinion of the Secretary of the Interior affirming the decision of the Commissioner. These opinions contained recitals of the facts out of which the contest grew, and of what Megerle had done to perfect his pre-emption right. The opinion of the Secretary of the Interior also recited that in February, 1856, the Register and Receiver of the Land Office had published a notice to settlers requiring them to file their declaratory statements on or before the fifteenth of May, 1856. These various documents were obtained from the custody of the Register. The defendant's attorney objected to the reception of this documentary evidence, because—

I. The recitals and statements therein contained were irrelevant, and because the papers were irrelevant.

II.   Said evidence tended to contradict the recitals contained in the patent, read in evidence by the plaintiff.

III.   It appeared upon the face of the patent that the same was issued to the plaintiff in this case as the assignee and locator of a certain bounty land warrant, issued under the Act of Congress therein mentioned, and not otherwise; and the proof now offered to be made would contradict and falsify the recital of that fact so as aforesaid set forth and recited in said patent.

IV.   The proof offered would contradict and falsify the nature and character of the title which passed to the plaintiff under and by the said patent, in this : That the said patent conveys by its terms to the plaintiff, such and only such title as might by the laws of the United States be passed to and vested in the plaintiff as assignee and locator of the bounty land warrant, in said patent mentioned; and the proof now offered would tend to show, and is offered for the purpose of showing, that the title that did actually pass by the said patent to the plaintiff was a title having its origin in an asserted pre-emption claim alleged to have been acquired by the plaintiff, not as such assignee and locator as aforesaid, but by virtue of settlement and improvement made by him upon said premises.

The Court overruled the objections.

The plaintiff then proved that the land in controversy at the commencement of the action was in the possession of the defendants, except about ten acres, which was in the possession of the plaintiff.

Plaintiff then proved his residence on the part of the land in his possession since 1850, and rested.

The defendants appealed from the judgment.

The other facts are stated in the opinion of the Court and the concurring opinion of Mr. Justice SAWYER.

*Patterson, Wallace & Stow*, for Appellants.

The recitals of the patent show that the plaintiff's title was *not* a pre-emption, and he is estopped to deny that fact.

(*Fitch* v. *Baldwin*, 17 John. 161; *Jackson* v. *Vanderheyden*, 17 John. 169; *Jackson* v. *Sternberg*, 20 John. 49; *Clinton* v. *McClaim*, 3 Haywood, N. C. 288, cited in U. S. Dig. Vol. V, supplement, Fal.-Wri. 87, Sec. 28; *Jackson* v. *Parkhurst*, 9 Wend. 209; *Penrose* v. *Griffith*, 4 Binney, 234; *Innskeep* v. *Shields*, 4 Harrington, Del. 345, cited in U. S. Dig. 1850, p. 192, Sec. 11; *Cain* v. *Flynn*, 4 Dana, Ky. 500; *Tison* v. *Yawn*, 15 Ga. 494–5; *Norvell* v. *Camm and Wife*, 6 Munford, Va. 237; *Witherington* v. *McDonald*, 1 Hen. & Munf. 309.) And this error was made the turning point of the case in the Court below, and the jury were *instructed* to find for plaintiff *on this evidence.* The Court absolutely instructed the jury that the proof showed that Megerle was a *pre-emptioner.* There was no proof that he was a citizen of the United States, unless indeed it be claimed by the respondent that when he was permitted to read in evidence his declaratory statement he established thereby not only the fact of his having made such a statement, but also that the several matters contained therein are true. This statement is not sworn to by any one; we could not cross examine it; it does not even state that he is such a citizen; all that appears is an *unsworn recital*— "being an American citizen." It did not therefore appear, either by the patent or in any other manner whatever, that Megerle was entitled to a pre-emption, and the instruction was erroneous. The Court repeated this error in permitting plaintiff to read in evidence the opinions of the Register and Receiver, Commissioner and Secretary of the Interior.

The indorsement on the plat of survey was evidence of the time it was filed. (*Bank U. S.* v. *Dandridge,* 12 Wheat. 69; 1 Green. Ev., Sec. 483.) The residence of plaintiff on the land did not entitle him to pre-empt unless he filed his declaratory statement within three months after the return of the plat. (Lester's Land Laws, 207; 10 U. S. Statutes at Large, 246.) The supposed right of Megerle to a pre-emption terminated absolutely in March; it was not in the power of any officer to restore that right to him; any pretended recognition of his claim after that time by a United States officer would be a mere bald usurpation and void. " But there are

cases in which a grant is absolutely void : as where the State has no title to the thing granted ; or where the officer had no authority to issue the grant. In such case the validity of the grant is necessarily examinable at law." (*Polk's Lessee* v. *Wendell*, 9 Cranch, 99.) "Yet if they, [the Register and Receiver,] undertake to grant pre-emptions in land in which the law declares they shall not be granted, then they are acting upon a subject matter clearly not within their jurisdiction ; as much so as if a Court whose jurisdiction was declared not to extend beyond a given sum, should attempt to take cognizance of a case beyond that sum." (*Wilcox* v. *Jackson*, 13 Peters, 511.) *Ladiga* v. *Roland*, 2 Howard, 581, was an action of *trespass quare clausum*, in which the defendants relied upon a United States patent. The Court held the patent *void*, even when thus collaterally assailed, for *want of authority*. (See, also, Mr. Wirt's Opinions, Vol. I, p. 323 ; Opinions U. S. Attorneys-Gen., Vol. II, p. 186.)

*Tyler & Cobb*, for Respondent.

A pre-emptioner may pay for his land with soldiers' bounty land warrants. (10 U. S. Statutes at Large, p. 3.) In determining the question of Megerle's right of pre-emption, the United States officers acted *judicially*, and this Court can no more review their decisions than it can review the decision of the United States Circuit Court in a matter of which it had jurisdiction. (*Wilcox* v. *Jackson*, 13 Pet. 511 ; *Elliott et al.* v. *Piersoll et al.*, 1 Pet. 340 ; *Galt* v. *Galloway*, 4 Pet. 342.)

Admitting, for argument, that the plat was filed in the Marysville Land Office, December 5th, 1856, the right of Megerle to a pre-emption did not determine on the 5th of March *necessarily*. If the plat was actually filed on that day, and the notice of such filing had been duly published, as the regulations of the Land Office require, and then Megerle had neglected to file for ninety days thereafter, any one else might have gone to the Land Office and filed a pre-emption, or selected the land on behalf of the State, and Megerle's

right would *then* have been gone; but Megerle had a right to his pre-emption notwithstanding his failure, if he filed his notice before the right of any other person intervened. The Government only could take advantage of the irregularity, and they waived it. (*Hoofnagle* v. *Anderson,* 7 Wheat. 212; Lester's Land Laws, Nos. 458, 475.)

The rights of the respective parties to this suit were finally settled in the case of *Megerle* v. *Terry* in the United States Land Office. Both parties were there represented, the case fully argued, and the rights of the claimants to this quarter section in controversy were adjudicated upon by a tribunal having jurisdiction of the subject matter.

We contend that the patent of plaintiff, coupled with the proof that it was issued upon a pre-emption claim, and that the claim of Terry to the land under the State was adjudicated by the Secretary of the Interior, in a contest between Terry (defendant's grantor) and Megerle, was *conclusive* of plaintiff's right to recover in this suit. *Bagnell* v. *Broderick,* 13 Pet. 436, was an action of ejectment brought by Broderick, defendant in error, for certain lands in Missouri. Plaintiff read in evidence a patent of the United States to John Robertson, and certain mesne conveyances to himself, and after proving possession in defendants at commencement of suit, rested his case. Defendants then offered certain proof, which was of an equitable nature, and showed that defendants were equitably entitled to the land, but the Court held " That in an action *at law* the patent from the United States for part of the public lands is *conclusive.* If those who claim to hold the land against the patent can show that it issued by mistake, then the equity side of the Circuit Court is the proper forum, and a bill in chancery is the proper remedy to investigate the equities of the parties."

It was further decided in that case " that Congress has the sole right to declare the dignity and effect of titles emanating from the United States; and the whole legislation of the Government in reference to the public lands declares the patent to be the supreme and conclusive evidence of the legal title. Until it issues, the fee is in the Government, which, by

the patent, passes to the grantee, and he is entitled to recover the possession in ejectment." This doctrine was sustained by the Supreme Court on appeal.

We do not deny the proposition that, where there are conflicting patents to land, or where there is a congressional grant of a *specific piece of land,* and a patent for the same land, the State Courts may, in an action at law, decide as to which is the better title. But that is not the case at bar. No patent has ever been issued but to Megerle. No grant was ever made to the State of this *specific piece of land.* A grant was made of five hundred thousand acres to the State, to be selected out of any lands *not reserved from sale.* But lands to which a valid pre-emption claim had attached were *reserved from sale,* and *ex necessitate rei,* the officers of the Government must decide what lands were *reserved* from sale, and thus not liable to be *selected* by the State. The donor must determine that question, and not the donee. In addition to the cases already cited we call the attention of the Court to the following cases: 6 Pet. 724; 11 Wheat. 580; 5 Wheat. 293; 7 Wheat. 151; 2 How. 375; 18 How. 43; 9 How. 333; 9 Missouri, 182.

By the Court, RHODES, J.:

Since the decision of this case, reported in 27 Cal. 322, there has been a new trial in the District Court, again resulting in favor of the plaintiff. At the new trial, the plaintiff, after introducing in evidence a patent for the land in controversy, dated September 1st, 1863, executed by the United States to him, in pursuance of a location of a soldier's bounty land warrant, offered certain evidence to show that he was entitled to a right of pre-emption in the premises under the provisions of section six of the Act of Congress of March 3d, 1853, and which had been perfected by the proper proceedings before the officers of the Land Department—the object being to extend his title back by relation to the time

11

of the inception of his pre-emption claim. It appears from that evidence that on the 16th of April, 1856, the plaintiff filed his declaratory statement with the Register at Marysville—the Marysville District then comprising the land in controversy. It further appears that the township including the lands was surveyed in the field in May and June, 1855; that the plat of the survey was approved by the Surveyor General October 19th, 1855, and was returned to, received and filed in the Register's Office at Marysville; but as to when the said map was actually filed in the Land Office at Marysville there was no proof offered by either party, except the map itself and indorsement thereon, which defendant read in evidence. Neither party could show as against the other, title from the United States, unless it was made to appear that the plat was returned to the proper Land Office. The indorsement referred to is as follows: "Filed December 5, 1855, Marysville Land Office," without being attested by the signature of any officer. The map itself, aside from the indorsement, furnishes no proof as to the time when it was returned to the Land Office at Marysville. By the statement on motion for new trial and appeal, it appears that the above indorsement furnishes the only proof of the time when the plat was returned to the Land Office. The plaintiff made no offer to prove the fact mentioned by the Secretary of the Interior in passing upon the plaintiff's pre-emption claim, that in February, 1856, the Register and Receiver published a notice to settlers requiring them to file their declaratory statements on or before the 15th of May, 1856, which fact tended strongly, in the absence of positive evidence, to show that the plat was returned at the date of the notice. The recital found in the opinion of the Secretary of the Interior, is not evidence of the fact or time of the publication of the notice; but even if evidence upon that point had been produced, it would be of no avail to the plaintiff, as the statement restricts the proof to the unsigned indorsement on the plat. The indorsement, though tending in but a slight degree to prove the time of the return of the plat, must be taken on this appeal as fixing the time. The 5th day of

December, 1855, must therefore be taken as the time when the plat was returned to the Land Office at Marysville; and therefore the declaratory statement of the plaintiff, filed on the 16th day of April, 1856, was too late. The Act of Congress of March 3d, 1853, for the survey of the public lands in California, etc., (10 U. S. Stats. at Large, p. 246,) provides, in the sixth section, that the declaratory statement must be filed " within three months after the return of the plats to the Land Office." The Courts have no authority to dispense with this requirement, and the decision of the Secretary of the Interior, introduced in evidence in this case, does not tend to the conclusion that the officers of the Land Department possessed such power.

The plaintiff cannot invoke the decision of the Secretary of the Interior, determining that the pre-emption claim was valid, as an estoppel as to Terry as well as the United States and the plaintiff, and this for several reasons. Terry was not a contesting pre-emption claimant, but claimed under the eighth section of the Act of Congress of September 4th, 1841, granting to each State five hundred thousand acres of land for purposes of internal improvements, and under the laws of this State providing for the selection of such lands; and no authority is given to the Secretary of the Interior or any of the officers of the Land Department of the General Government to determine the regularity or sufficiency of locations made under those Acts, in selecting the land granted to the States—the Act of Congress providing that the selections in all the said States shall be made within their limits, respectively, " in such manner as the Legislature thereof shall direct." Admitting that such decisions are binding upon contesting claimants of the right of pre-emption, they are without force as against third persons. At the trial, the plaintiff stated that he intended to prove that the plaintiff was " entitled to a pre-emption claim upon said premises," and that in a contest between the plaintiff and Terry, the officers of the Land Department determined that the plaintiff had, in fact, such pre-emption right, and he proved certain of the facts, upon which the alleged right of pre-emption

accrued to the claimant.   A party cannot rely upon a judicial
determination of an issue by way of an estoppel, and also
upon proof of the facts upon which the determination is
based.   The necessary effect of the estoppel is to preclude all
inquiry as to the truth of the matter determined, and when a
party who is entitled to set up the estoppel does open the
inquiry into the truth of the matter, he cannot complain that
the other party pursues it without regard to the estoppel.

The objection of the defendant, that evidence going to
show that the plaintiff had acquired a right of pre-emption,
and that the patent was issued in confirmation of such right,
was inadmissible, because it tended to contradict the patent,
which showed on its face that it was issued upon the location
of a soldier's bounty land warrant, cannot be sustained.   The
Act of Congress of March 22d, 1852, (10 U. S. Stats. at
Large, p. 3,) provides that land warrants may be used by a
person entitled to a pre-emption right to any land in payment
for the same.   There is no statute that we are aware of pro-
viding that the patent shall recite that it is executed for lands
to which the patentee held a right of pre-emption, nor, when
the lands have been located under a soldier's bounty land
warrant, that the patent shall recite that fact.   We are there-
fore unable to see how the recital of either of those facts in
the patent would exclude the proof of the other, or tend to
show that it was not true.   The one is not inconsistent with
the other, and if either or both are wanting from the patent,
the proof of either or both, neither adds to, varies nor con-
tradicts the patent.

Leaving out of view the decisions of the Commissioner of
the General Land Office, and of the Secretary of the Interior,
the proof was not sufficient to show that the plaintiff had a
right of pre-emption to the premises.   He testified in his
own behalf as a witness, but he failed to state several facts
that must be shown, in order to make it appear that he was
entitled to a pre-emption right—as his age, or that he was
the head of a family; that he was a citizen or had filed his
declaration to become a citizen; that he was not the owner
of three hundred and twenty acres of land, etc.   The condi-

tion and state of facts under which the right to a pre-emption accrues, must be proven by competent evidence, and in the same manner as other facts are required to be proved in a cause. The fact that the claim was made or approved, may and should be proved by official certificates, record entries or other appropriate documentary evidence; but the facts upon which the claim rests, cannot be shown as against a person claiming title through another and a different course of procedure, by the recitals in official documents to which he bears no relation. The Court instructed the jury, at the request of the plaintiff, that the plaintiff had shown such a compliance with the laws of the United States and the regulations of the Land Department as entitled him to a pre-emption claim to the premises. In this we think the Court was in error. The term " compliance " we understand as meaning in that connection, not only the performance of the requisite acts by the claimant, but also that he possessed the necessary qualifications as to age, citizenship, etc., prescribed by the Act of Congress granting rights of pre-emption. The instruction was doubtless given under the idea that the decision of the Secretary of the Interior, together with the other official documents, showed both qualification and performance on the part of the plaintiff, and that they were conclusive on that matter; but, as we have already stated, they were not admissible as evidence of those matters as against third persons. The facts going to show performance were for the jury, and when found, it was the province of the Court to declare their effect. If the jury should find that the plaintiff possessed the statutory qualifications, and filed his declaratory statement within three months after the return of the plat to the Land Office, and thereafter performed the acts required on his part by the regulations of the General Land Office, they should be instructed that he was entitled to a pre-emption claim to the premises, which, when completed by a patent from the General Government, vested him with the legal title, and that the title took effect by relation at the time of the first act performed by him to acquire the right of pre-emption. But the question of performance of the requi-

site acts, including qualifications, was a question of fact for the jury.

Judgment reversed and the cause remanded for a new trial.


SAWYER, J., concurring specially:

The plaintiff claims title under a patent from the United States, bearing date the first day of September, 1863. The patent purports by its recitals to have been issued in pursuance of the location of a soldier's bounty land warrant, number eighty-nine thousand two hundred fifty-six, for one hundred sixty acres of land.

The defendant claims title under a patent of the State of California, dated the eighth day of January, 1862, issued to David S. Terry upon the location of State school land warrants in pursuance of the several Acts of the State of California authorizing said school land warrants to be located upon any part of the five hundred thousand acres of the public lands granted to the State of California by the Act of Congress of the fourth of September, 1841, entitled "An Act to appropriate the proceeds of the sales of public lands and to grant pre-emption rights," and appointing the holders of said school land warrants the agents of the States to select said lands. The location of school land warrants, in pursuance of which the patent issued to Terry, was made on the fourteenth of May, 1856. Both, therefore, ultimately claim under the United States, and the question is which has the elder title.

. Knowing that the defendant's title had its inception at the date of the location of the school land warrant, May 14th, 1856, and that his patent was first in point of time, plaintiff, with a view of claiming a pre-emption right, under the Act of Congress, introduced testimony tending to show a settlement long prior to the date of the location of defendant's school land warrant; and that he filed his declaratory statement in the proper Land Office at Marysville on the sixteenth of April, 1856. To show that he regularly followed up his pre-emption claim till it resulted in a patent, and for the pur-

pose of showing that the question of priority was *res adjudi-cata* between him and defendant's grantors, and that the latter were estopped from further contesting the matter, he produced from the custody of the Register of the Land Office at Stockton, and introduced in evidence the written memoranda of certain proceedings, in which the claims of the respective parties were contested between him and Terry, before the Register of the Land Office at Stockton, and, on appeal, before the Commissioner of the General Land Office and Secretary of the Interior, in which the decision of the latter officer was in favor of plaintiff and against Terry. The defendant objected to the introduction of all this evidence as irrelevant, and because it contradicted the recitals of the patent, which appeared to have been issued in pursuance of a location of a soldier's bounty land warrant; and it was further objected to some of the papers, that the recitals therein contained were not evidence of the truth of the facts recited, as against the defendant.

The objection to the evidence tending to show that plaintiff had acquired a pre-emption right, and that the patent connects itself with, and perfects such right, is not tenable. This evidence is in no respect inconsistent with the recitals, or anything else contained in the patent. The Act of Congress of March 22d, 1852, (10 U. S. Statutes at Large, p. 3,) provides that land warrants of the kind recited in the patent, may be used by a person entitled to a pre-emption right to any land in payment for the same. A pre-emption right is simply the first right to purchase—the right to purchase upon certain terms in preference to any other person. When the Department determines that a pre-emption right exists, it simply determines that the applicant has a right to purchase. The rest relates to payment and the issuing of a patent. The payment may be either in cash, or by location of a soldier's bounty land warrant. There is no good reason in either case for requiring the patent to show that the purchaser was entitled to a pre-emption right. It is enough that the Government allows the purchase and issues a patent. I am not aware of any statute requiring the patent, whether

issued upon a cash payment or in pursuance of the location of a bounty land warrant, to recite that the patentee had acquired a pre-emption right, or to refer in any manner to the pre-emption right; nor am I aware that any such recital is, in practice, ever made. Proof by other evidence that the patent was issued in pursuance of a purchase made under the Act allowing pre-emptions, and to perfect a pre-emption right, in no respect contradicts the recitals of the patent, but on the contrary it is in entire harmony with the provisions of the statute allowing lands thus claimed to be paid for by the location of a warrant upon them. Proof of the existence of a valid pre-emption right at the time of the location by the State agent, and that the right was regularly followed up to a patent, is relevant and admissible; for the State was not authorized to select lands upon which a valid pre-emption right existed at the time of the selection. The propriety of admitting evidence to connect the patent with the prior entry, to show whose right first attached, in cases of conflicting patents, is recognized by the Supreme Court of the United States. In *Bagnell* v. *Broderick*, 13 Peters, 450–1, the Court say : " We have been referred to the case of *Ross* v. *Barland*, 1 Peters, 662, as an adjudication involving the principles in this case. We do not think so. In that case there were conflicting patents, the younger being founded on an appropriation of the specific land, by an entry in the Land Office of earlier date than the senior patent. The Court held that the entry and junior patent could be given in evidence in connection as one title, so as to overreach the elder patent. The practice of giving in evidence a special entry in aid of a patent, and dating the legal title from the date of entry, is familiar in some of the States, and especially in Tennessee ; yet the entry can only come in aid of a legal title, and is no evidence of such title standing alone, when opposed to a patent for the same land. Where the title has passed out of the United States by conflicting patents, as it had in the case of 6 Peters, there can be no objection to the practice adopted by the Courts of Mississippi to give effect to the better right, in any form of remedy the Legislature or Courts of the State

may prescribe." This point being determined, the principal question is, which party's right first attached by virtue of the preliminary proceedings taken by them respectively, which finally resulted in their patents.

If the selection of Terry as agent of the State in pursuance of the Act of Congress, and the Acts of the Legislature of California, after the lands were open to selection, was first in time, by such selection the land became segregated from the public domain, and the legislative grant at once attached to that specific tract of land, and it was no longer subject to pre-emption. If, on the contrary, a valid pre-emption right first attached, and it was subsequently regularly followed up to a patent, the land was not subject to selection. (*Terry v. Megerle*, 24 Cal. 625.) At the time when the contest between Terry and Megerle before the Register of the Land Office commenced, the question between them was, whether the right had already passed from the United States by virtue of the grant to California, and selection by Terry as agent of the State, at the time the effective pre-emption claim attached. This was not a question within the jurisdiction of the several officers of the Land Department of the United States Government to adjudicate. It would, in substance, be a litigation of the title between the United States Government, and Terry claiming under a grant already made, on an application by Megerle to the Government for a purchase of the land. No such jurisdiction is conferred on the officers of the Land Department. For the purposes of the contest, the Land Department and the Secretary of the Interior necessarily assumed, as the foundation of their jurisdiction, that the United States Government owned the land, and that it was open to pre-emption by somebody—the very point now in contest; and assuming this point, the jurisdiction extended to a determination, as between the Government and the contestants of the rights of parties seeking to purchase. Terry did not occupy the position of such a party, and he was not seeking to purchase of the United States. He claimed that he had already acquired a right under a grant made to California, and that

12

the grant had attached to the specific tract and the title had actually vested in the State, by virtue of his location; and those tribunals had no jurisdiction to finally adjudicate his rights. Their determination, therefore, did not conclude him. It follows that the record of the proceedings before the various officers of the Land Department, in the contest between Terry and Megerle, was not admissible in evidence as matter of estoppel against Terry, by showing that the matter had already been adjudged; nor for the purpose of proving, as against Terry, the truth of the matters recited in the various opinions and documents. These documents are admissible, however, in connection with evidence of an entry and possession with a view of pre-empting and other acts tending to show that Megerle followed up his entry, for the purpose of showing that he himself regularly pursued his right, and that the Government actually recognized a pre-emption right, and finally issued the patent in pursuance of, and to give effect to, such recognized right. As against Terry's patent, we think it was necessary for Megerle to prove the facts essential to show his right to a pre-emption— that is to say, his qualifications, entry and the other facts designated by the Act of Congress, which are necessary to confer the right, by evidence independent of the recitals in the record of the contest with Terry, as those recitals are not evidence for that purpose against Terry. That a party relying upon a pre-emption right must prove the facts which entitle him to it, we held in *Page* v. *Hobbs*, 27 Cal. 484. The same principle was adopted by Mr. Justice Field, in an opinion delivered at the last term of the Circuit Court of the United States held by him in San Francisco, in the case of *Gimmy* v. *Culverson.* These essential facts were not proved at the last trial. Besides, the memoranda produced from the custody of the Register of the Land Office were evidently admitted as matter of estoppel, and for other purposes than merely to show the fact that Megerle regularly followed up his pre-emption claim, and that a pre-emption right was recognized by the Land Department, and the patent, in fact, whether rightfully or wrongfully, issued in pursuance of it.

As these memoranda were not admissible as matters of estoppel, whether they, in connection with the other evidence, were sufficient to show a valid pre-emption claim in existence at the time Terry located his school warrant, was a question for the jury, and it should not have been taken away from them by the Court. For these reasons, I think, the Court erred in instructing the jury to find for the plaintiff.

It appeared in evidence that the township including the lands in question was surveyed in the field in May and June, 1855 ; that the plat of the survey was approved by the Surveyor General October 19th, 1855, and was returned to and received in the Register's office at Marysville, " but as to when the said map was actually filed in the Land Office at Marysville, there was no proof offered by either party, except the map itself, and the indorsement thereon." There was an indorsement, as follows: " Filed December 5, 1855, Marysville Land Office," but it was unauthenticated by the signature of any party, and on this ground the plaintiff objected to its introduction. It was admitted, however, for what it was worth. The date of the filing is important to both parties, for, till the lands are finally surveyed, the plaintiff was not authorized to file his declaratory statement, and if his declaratory statement was not filed within three months after the filing of the plats in the Land Office, his pre-emption right would not connect itself with his prior possession, and date by relation from the time of the first entry. So, also, defendant's grantor was not authorized to locate his school land warrants until the lands were finally surveyed.

I am of opinion that this naked unauthenticated indorsement of itself, is not evidence of the date of the filing. Perhaps it might be so connected with other evidence relating to it, as to make it admissible with such explanatory testimony. But standing by itself, it is of no value. Independent of this there is no legal evidence tending to show the date of the filing, and it is impossible to determine from the record whether Megerle's declaratory statement was filed in time to connect his pre-emption right with his original entry, so as

Opinion of Sawyer, J., concurring specially.

to protect him from that date, or whether Terry's school land warrant was duly located.

If Megerle failed to file his declaratory statement within the time required by the statute after the filing of the plats in the Land Office, his pre-emption right would not date by relation from the time of his first entry with a view to acquiring such a right. It may be, if no other party acquired any rights in the land after the expiration of the three months, and before the filing of Megerle's declaratory statement, that a new pre-emption right would attach, dating from the filing of such statement. The lands during that period were open for pre-emption to everybody having the necessary qualifications, and there does not seem to be any good reason why Megerle himself should stand in any worse position than other parties. And such seems to be the construction put upon the Act of Congress by the officers of the United States Government. (Lester's Land Laws, No. 458, p. 405.)

But this point has not been thoroughly discussed in the case, and it is unnecessary to decide it now. Besides, it may not arise on the next trial. I find nothing in *Bagnell* v. *Broderick*, 13 Pet. 446, or in any other case cited by respondent, in conflict with the views here expressed. The questions in the cases cited are entirely different.

Upon the grounds indicated, I think the judgment should be reversed and a new trial had.

Mr. Chief Justice Currey did not express an opinion.