Dolores Araújo de Jiménez et al., Plaintiffs and Appellees, v. Rafael Arenas et al., Defendants and Appellants.

No. 8192. Argued February 13, 1942.—Decided April 21, 1942.

Rehearing denied May 27, 1942.

278

*Miguel A. Bustelo and Francisco González Fagundo* for appellants.
   *Arturo Ortiz Toro* for appellees.

Mr. Justice Todd, Jr., delivered the opinion of the court.

In this case the District Court of Humacao sustained the complaint and rendered judgment in favor of the plaintiff, José Salgado Jiménez, and against the defendants, Rafael Arenas and Felipe Licha, on October 2, 1939. Each defendant in the proceedings had appeared separately, represented by his attorney. However, when they appealed from said judgment to this Supreme Court, they did so jointly in a single notice of appeal subscribed by their attorneys, and they affixed thereto a $5 internal revenue stamp. The notice of appeal was filed in the office of the clerk of the lower court on October 30, 1939, and was served on the same day on Attorney Arturo Ortiz Toro, counsel for plaintiff José Salgado Jiménez.

After the appeal had been perfected and a day set for the hearing thereof, Attorney Arturo Ortiz Toro moved for

a dismissal on two grounds, to wit: (1) because only one internal revenue stamp of the value of $5 had been canceled, whereas there were two defendants and appellants who had prosecuted their cases separately, and (2) because, plaintiff José Salgado Jiménez having died on September 15, 1939, the service of the notice of appeal on Attorney Ortiz Toro was void, inasmuch as his authority to represent the plaintiff was terminated on the latter's death and, therefore, this court was without jurisdiction to hear the appeal. The death certificate of José Salgado Jiménez, which was attached to the record, shows that said plaintiff died on September 15, 1939. From the record it also appears that it was not until December 17, 1941, that plaintiff José Salgado Jiménez, on motion filed in this Supreme Court by Attorney Arturo Ortiz Toro, was substituted by his heirs Dolores Araújo, widow of Jiménez, and Genoveva Salgado.

The parties were heard on the motion to dismiss on the same day of the hearing of the appeal on the merits.

██ As to the first ground for dismissal, it is true that defendants Arenas and Licha answered separately but filed jointly a single notice of appeal and canceled thereon one $5 internal revenue stamp. We fail to find anything in the Code of Civil Procedure to prevent any defendants against whom a solidary judgment has been rendered, as happens in the case at bar where they were adjudged to pay to the plaintiff $500 as damages, with costs and $200 as attorney's fees, from including their appeals from said judgment in a single notice. Besides, in *Dessus* v. *Ricci*, 27 P.R.R. 687, 688, wherein the appellant included appeals from two orders in a single notice and affixed thereto a five-dollar stamp, we held, in deciding a motion to dismiss on that ground, as follows:

"Subsection D of section 2 of Act No. 17 of 1915, regulating the collection of fees and costs in civil cases in the district and municipal courts, provides as follows: For each notice of appeal from a district to the Supreme Court, $5.'

"As the language of a law should generally be given its most usual and ordinary meaning, and as the act requires the payment of five dollars for each notice of appeal, we are of the opinion that the appellant complied with that statute notwithstanding the fact that the notice covered *two* appeals, for, according to the letter of the law, it is only necessary to pay five dollars for each notice of appeal and not five dollars for each appeal referred to in the same notice." (Italics ours.)

In the cited case the position of the appellee was stronger, as there were involved two appeals taken from distinct orders in a single notice, whereas in the case at bar the appeal is from a single judgment, although two appellants are concerned.

As to the second ground for dismissal, although it is true that under §1623 of our Civil Code (1930 ed.) as well as under the common law, the agency terminates upon the death of the principal, it is no less true that two possible situations must be taken into account when passing upon the question raised. If Attorney Arturo Ortiz Toro, counsel for plaintiff José Salgado Jiménez, was unaware of the death of his principal at the time of the service of the notice of appeal, his acceptance of said service was valid in accordance with §1629 of the Civil Code (1930 ed.), the first paragraph of which provides that—

"What has been done by the agent, when he was not aware of the death of the principal, or of any other of the causes which terminate the agency, shall be valid and of effect with regard to third persons who may have contracted with the agent in good faith."

If even where a contract has been executed by an agent who is unaware of the death of his principal, such contract must be considered as valid with regard to third parties who have contracted with him in good faith, why should not be valid the service of notice of appeal made by the defendants herein who, we must presume, were also unaware of the death of the plaintiff and who, therefore, acted in good faith?

If, on the contrary, Attorney Arturo Ortiz Toro was aware of the death of his client at the time of the service on him of the notice of appeal, and notwithstanding his knowledge of the fact that the agency had terminated, he failed to inform both the defendants and the court of that fact, it must be concluded that he acted in bad faith and his action could not and should not bind the defendants-appellants.

Commenting on §1738 of the Spanish Civil Code, which corresponds to §1629 of our Civil Code, Manresa in vol. XI (4th ed.), pp. 504 and 505, says:

"The statement contained in §1738 regarding the validity of the acts performed by the agent before he was aware of the death of the principal, is of a general character and validates such acts in cases of revocation, bankruptcy, and insolvency, with respect to third persons who have contracted with him in good faith. The code provision thus indicates *that the ignorance must be shared alike by the third persons and the agent, for if the former had notice of the death,* bankruptcy, or insolvency *of the principal or the revocation of the power, the acts would be void with respect to them, as they might justifiably be charged with bad faith by reason of their having contracted while being fully aware of the fact that the agent could not act for the principal, since they knew that fact although the agent did not.*

"The standard provided by §1738 doubtless constitutes an exception to the general rule of law that error voids consent, but it is justified, as in many other cases, by the principles of equity so as to avoid that the *summum jus* might become *summa injuria. Such validation is really a legal fiction established for the benefit of the agent and third persons who act in good faith, which validation ends when the agent or the third persons have knowledge of the termination of the agency. In the event that there was bad faith on the part of the agent but not of the third parties, the agent would be liable for fraud and the third persons would be entitled to bring the proper actions against him.*" (Italics ours.)

In California, in *Moyle* v. *Landers,* 20 P. 241, the doctrine of estoppel was applied against a party and his attorney who, with knowledge of the death of the party's pre-

decessor in interest, whom said attorney had represented, accepted the service of a notice of appeal on the day following such death and concealed the fact from the adverse party until after the expiration of the term within which further notice might have been given. When denying a motion to dismiss on the ground of lack of jurisdiction of the Supreme Court, and after conceding that in an ordinary case wherein the appellant fails to comply with the statute by serving the appellee seasonably with notice of the appeal a jurisdictional question would arise, that court said:

"But this is not the question before us. The question here is whether parties who have fraudulently prevented the service of the notice, by the concealment of material facts, and a failure to enter their objection to the jurisdiction of the court at the proper time, and, for the fraudulent purpose of preventing the proper service of the same, have delayed making their objection until it was too late to remedy the defect, should not now be estopped to attach the notice given, or to question the jurisdiction of the court. We are of the opinion that the respondents should not now be heard to question the jurisdiction of this court for the want of the service of a proper notice of appeal, under the circumstances of this case."

We are not, however, deciding this question on the basis that there has been bad faith, for, in the absence of proof to the contrary, we will presume that there has been good faith on both sides; and this being so, we must apply §1629 of the Civil Code, *supra,* and consequently hold that the service of the notice of appeal made on Attorney Arturo Ortiz Toro, when both he and the appellants were unaware that José Salgado Jiménez had died, is valid, and hence the dismissal of the appeal does not lie.

We will now proceed to consider the appeal on the merits.

██ Although the appellants have assigned seven errors, we think that the fifth assignment, if well-founded, would be sufficient to dispose of the appeal, as a reversal of the judgment would lie. In said assignment it is urged that the court erred in holding that the defendants had waived the

defense of *res judicata* set up in the answer to the complaint.

The former suit on which the appellants rest their defense was an injunction proceeding instituted by Rafael Arenas, defendant herein, against Rafael Batalla, Marshal of the District Court of Caguas, in which Miguel Francisco intervened in favor of the defendant. The facts therein were as follows: Miguel Francisco, in order to execute a judgment in his favor rendered by the Municipal Court of Caguas in an action of debt instituted against Felipe Licha, defendant herein, attached a Buick automobile belonging to Licha, the sale of which at public auction was advertised by the marshal. Thereupon, Rafael Arenas, claiming to be the holder of a promissory note for $800 subscribed by Licha on June 6, 1932, to secure which Licha had mortgaged the automobile in question, the mortgage having been registered on July 14, 1932, instituted an injunction proceeding against the said marshal in which he alleged that Francisco had failed to deposit in court the amount of the mortgage, and if the public auction were held it would cause irreparable damage to the petitioner. Then Miguel Francisco intervened in the injunction proceeding and filed a demurrer and an answer in which he alleged that the mortgage in favor of Arenas was fraudulent and, therefore, void. The defendant marshal failed to appear and the litigation actually became a controversy between Francisco and Arenas. The district court dismissed the complaint, having reached the conclusion that the mortgage was simulated and had been executed "for the sole purpose of defeating the rights of third persons holding legal claims to be enforced against Licha's property." On appeal to this court, the judgment of the lower court was reversed and another rendered instead granting the injunction sought (*Arenas* v. *Batalla,* 48 P.R.R. 30), and this court, speaking through Mr. Chief Justice Del Toro, said:

"'We shall refer only to the simulation. We have examined carefully the evidence offered, and in our judgment it is not sufficient to justify the conclusion that the transaction between Licha and Arenas appearing in the mortgage document was vitiated by fraud. (Then follows an analysis of the evidence.) It is also true that the last contract, that of July 22, 1932, does not appear to have been canceled in the Department of the Interior, but that fact does not weaken or destroy what Arenas said as to his having fulfilled his obligation and paid what he was owing on account of the conditional sale.

"In order to conclude that the mortgage contract is fraudulent, something more is necessary than the doubts which might arise on account of the contradictions already mentioned, upon which the trial judge based his decision."

The writ of injunction, however, could not be enforced, because, upon the refusal of the district court to grant the original petition for injunction, a new writ of execution was issued on motion of Francisco and the public auction took place on October 28, 1933, the attached automobile being sold for $300 to Miguel Francisco. Subsequently, Francisco sold it to Pedro Pizá and the latter sold in turn to José Salgado Jiménez. Finally, Rafael Arenas foreclosed, in the District Court of San Juan, the mortgage upon said automobile which had been declared valid by this court in *Arenas* v. *Batalla, supra,* and the automobile was taken away from Salgado Jiménez.

Thereupon Salgado brought the present action for nullity and for the recovery of damages against Arenas and Licha, and alleged that the mortgage was void and ineffective for lack of consideration; that is, he relied on the same grounds set up by Francisco in the injunction proceeding. It was against this action that the defendants pleaded the defense of *res judicata.*

In passing upon the question raised, the lower court said:

" . . . in view of the fact that, although the defendants set up the defense of *res judicata,* in the form in which it appears in their answers, they also denied the simulation of the said mortgage, thus

opening again for investigation the very facts on which they based their allegation of the existence of a former judgment; bearing in mind that during the prosecution of the action the defendants allowed, without objection, the introduction of evidence tending to show the simulation of the above-mentioned chattel mortgage and they themselves proceeded, at the same time, to submit evidence to overcome the evidence in this respect submitted by the plaintiff; and considering that this amounted to a waiver of the defense of *res judicata,* in accordance with the doctrine laid down in 34 C. J. 749–750, in which it is said:

" 'So where a party is guilty of laches in setting up the defense of res judicata, or joins issue on the very questions settled by the judgment, or voluntarily opens an investigation of the matter he might claim to be concluded by it, or makes an admission of record inconsistent with the former judgment, he will be held to have waived the benefit of the estoppel, and the case may be determined as if no such former judgment had been rendered.' "

Was there in this case the waiver to which the lower court refers? We are of opinion that this question must be answered in the negative. The citation from Corpus Juris relied on by the lower court does not cover the case of the defendants. On the contrary, among the cases cited in the footnotes to the quoted excerpt there are several decisions which hold that a defendant does not waive his rights under a judgment pleaded in bar, by the mere act of also contesting the claim of the plaintiff upon the merits. Thus, for instance, in *Harding* v. *Harding,* 148 Cal. 397, 83 P. 434 (1906), there were overruled the cases of *Megerle* v. *Ashe,* 33 Cal. 74 and *Hicks* v. *Lovell,* 64 Cal. 14 (in spite of which they are cited in Corpus Juris to support the section copied by the lower court), the Supreme Court of California saying:

". . . She at all times, however, insisted upon her claim that the Illinois judgment constituted a full defense, and introduced the record of the Illinois proceedings in evidence, and relied upon the same as a complete defense and there is nothing to indicate any intention to waive the benefit of the Illinois judgment, unless such intention was manifested by defendant's failure to interpose any objection to such evidence as was offered by plaintiff upon the question

287

·of residence and desertion, her cross-examination of plaintiff's witnesses upon the subject, and the introduction by her of evidence tending to disprove the allegation of desertion. It is manifest that, under the circumstances, these facts indicated no intention on the part of defendant to waive the benefit of the Illinois judgment. . . . Under our system she had the right to set forth, prove, and rely upon as many defenses as she had (Code Civ. Proc., sec. 441; *Banta* v. *Siller,* 121 Cal 414, 417, (53 Pac. 935); *Miles* v. *Woodward,* 115 Cal. 308, 315, and we know of no rule of law that required her to elect between her two defenses, even had the plaintiff asked the court to compel her so to do, which he did not.

". . . But whatever construction may be put upon *Megerle* v. *Ashe,* 33 Cal. 74, and the later case of *Hicks* v. *Lovell,* 64· Cal. 14, 22, where something is said that might be construed as an approval of the statement quoted from the former case, we are satisfied that, under our system, a defendant does not waive his rights under a judgment pleaded in bar, by the mere act of also contesting the claim of the plaintiff upon the merits. We can see no valid reason in such a case for any exception to the general rule applicable in this state, to the effect that a defendant may plead any and all of the defenses that he may have, that he may pursue and rely upon all of his defenses so pleaded to the end, and that if any defense so pleaded is found to be good he is entitled to prevail. If there be anything inconsistent with this in the two California cases relied upon by plaintiff, it must be considered as overruled."

Said case has been cited with approval, among others, in *Reclamation Dist.* 785 v. *Lovdel Bros. Co.,* 183 P. 598 (1919), and *Hickey* v. *Johnson,* 9 F. (2d) 498 (1925), wherein the U. S. Court of Appeals for the Eighth Circuit said:

"We think, before a party can be held conclusively to have waived this defense, he must have assumed a position so inconsistent with its assertion as to amount to an election to abandon it, or the proceedings must have reached such a stage that allowance of the defense would be inequitable. (Citing authorities.)"

It should also be stated that the assertion made by the lower court to the effect that the defendants introduced evidence to controvert that presented by the plaintiff in regard to the simulation of the mortgage, is not supported by the

contents of the transcript of evidence sent up to this court. The defendants confined themselves to the introduction of documentary evidence in order to establish their defense of *res judicata*. At no time did the defendants introduce evidence regarding the validity of the mortgage. The question lacks importance, for, as we have seen from the decision in the *Harding* case, *supra,* the fact that a defendant should introduce evidence to controvert that presented by the plaintiff does not mean that he waives the benefit of his defense of *res judicata*. Section 441 of the Code of Civil Procedure of California, cited in said case, is equivalent to §114 of our code and in accordance with it a defendant may set up as many defenses as he may have in opposition to the complaint. We are of opinion that the lower court erred in holding that the defendants had waived their defense of *res judicata;* for although it is true that defendant Arenas failed to include the same in his original answer, he did so in his amended answer, and it has been held that even after a judgment has been reversed and the case remanded to the lower court, the defendant may amend his answer by including said defense therein. See *Hickey* v. *Johnson, supra.*

■ The essential question to be decided in this case is whether or not the judgment rendered in the former case of *Arenas* v. *Batalla,* 48 P.R.R. 30, constitutes *res judicata* with respect to the action brought in the case at bar. Section 1204 of the Civil Code, in its pertinent part, provides as follows:

"Section 1204.— .　　.　　.　　.　　.　　.　　.

"In order that the presumption of the res adjudicata may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes and persons of the litigants, and their capacity as such.

"*　　*　　*　　*　　*　　*　　*

"It is understood that there is identity of persons whenever the litigants of the second suit are legal representatives of those who

litigated in the preceding suit, or when they are jointly bound with them or by the relations established by the indivisibility of prestations among those having a right to demand them, or the obligation to satisfy the same.''

In the first place, we will say that plaintiff José Salgado Jiménez was a successor in interest of Miguel Francisco with respect to the automobile involved in the chattel mortgage, as Francisco sold the same to Pizá and the latter in turn sold it to Salgado. So that as between defendant Arenas, who was the prevailing party in the former suit, and plaintiff Salgado there is identity of litigants, for it is an established rule that the presumption of *res judicata* shall be valid not only against the original parties to the former suit, but also against their successors in interest and against those who are bound *in solidum* with them. Section 1204, *supra;* 34 C. J. 1009, 1010; *Rodríguez v. Castaign, et al.,* 7 P.R.R. 360; *González v. Méndez,* 15 P.R.R. 682, it having been held in the latter case that, even though in the second suit new parties defendant are brought in, if they are bound *in solidum* as mortgage creditors, the presumption of *res judicata* must prevail. In this connection, although the defendant Licha was not a party to the former suit, since he is a mortgage debtor of Arenas, he is in privity with the latter in contemplation of law. See to the same effect 34 C. J. 975.

The fact that the former judgment was one rendered by this court reversing a decision of the lower court, does not alter the situation, for said judgment was on the merits, that is, on the question of nullity raised. In this connection, it is said in 34 C. J. 774:

"Where, however, the appellate court has reversed for causes going to the merits, and the reversal shows an intention finally to decide the case upon the merits, the judgment then has all the characteristics necessary to constitute it res judicata.''

Nor does the fact that the former proceeding was one of injunction affect the legal situation, since the presumption

of *res judicata* is not dependent on the form or object of the litigation in the former suit, but on the existence of a prior determination of rights in controversy by a final decision. 34 C. J. 760, §1173; *Balasquide v. Luján*, 45 P.R.R. 548. In the cases herein, that is, in the injunction suit and in the case at bar, the causes of action are identical, for in both the question at issue is the validity or nullity of a chattel mortgage.

The appellees, however, argue that in any event the defense of *res judicata* can not prevail because in their third cause of action the validity of the foreclosure proceeding brought by Arenas was attacked, and that this question was not covered by the decision in the former suit. We think that the appellees are not right.

In the injunction case there was expressly decided the following:

"Consequently, since the intervener Miguel Francisco has not shown the invalidity as to himself of the mortgage held by the plaintiff Arenas, *he could only attach the mortgaged automobile in execution of his judgment after depositing the amount of the obligation secured by mortgage, and, as he has not done so, the court must grant the injunction prayed for.* Section 10 of Act No. 19 of 1927, as amended by Act No. 71 of 1930 (Session Laws, p. 448), reads as follows:

" 'Section 10.—No mortgagor of personal property shall sell, pledge or otherwise dispose of or encumber property mortgaged by him, or any part thereof, without the written consent of the mortgagee. But such property, may be attached after depositing in the office of the secretary of the court taking cognizance in the case the amount of the obligation secured by mortgage; *Provided,* That the mortgaged property shall not be removed from the municipality where it is located, prior to the deposit of said amount, except as provided in section 9 of this Act.' " (Italics ours.)

As Miguel Francisco, predecessor in interest of Salgado, had no right to attach the automobile without first depositing in court the amount of the mortgage obligation, which he never did, he acquired no title to the automobile

which might have been transferred by him to Pizá and subsequently by the latter to Salgado, and since he failed to acquire such title, he would have no right to urge the grounds for nullity alleged by him in regard to the foreclosure of the mortgage. If the mortgagor had been the one who claimed damages from Arenas, he would be entitled to raise those questions; but there is involved a third person who by reason of his failure to comply with the mandatory provisions of §10 of Act No. 19 of 1927, *supra,* as has already been held by this court, had no right to attach the mortgaged movable. The subsequent acquisition by Miguel Francisco of the automobile, effected through a foreclosure carried out during the pendency of the appeal in the injunction case, was void *ab initio,* and was divested of any legal force upon the issuance by this court of the injunction sought by Arenas.

We are of opinion that the defense of *res judicata* pleaded by the defendants should have been sustained by the lower court, and that in failing to do so, it committed the error assigned.

The judgment appealed from must be reversed and another rendered instead sustaining the complaint, with costs.

Mr. Justice Travieso did not participate herein.

ON MOTION FOR REHEARING

May 27, 1942.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

The plaintiffs-appellees have filed a lengthy motion for reconsideration of the judgment rendered in this appeal. We do not deem it necessary to go into a consideration of the numerous questions raised by them, as their main contention is that the attachment levied on Miguel Francisco by Felipe Licha in favor of Rafael Arenas was not void and that, therefore, José Salgado could set up any defense in regard to the public sale, especially due to the fact that

upon the automobile being removed from Caguas to San Juan by the debtor Licha, the latter had failed to record the mortgage in the Registry of San Juan.

█ Regarding this last point it will suffice to say that in *United Porto Rican Bank* v. *Ruiz*, 43 P.R.R. 506 and *United Porto Rican Bank* v. *González*, 46 P.R.R. 755, it was held, to quote from the syllabus of the latter case, the following:

"The registration of a chattel mortgage in the district where the debtor resides and the chattels are located is a notice to everyone— whether he resides in said district or not—of the lien constituted on the property. It is only necessary to record the mortgage anew in the registry of the district to which the chattels are transferred, where said transfer is made with the consent of the creditor."

And in the case at bar, although it is true that the debtor Licha removed the automobile to San Juan, it does not appear that the creditor Arenas had granted his consent to such removal. The recording of the mortgage in the Registry of Caguas was a notice of the existence of that lien to Miguel Francisco as well as to José Salgado Jiménez.

█ In establishing the requisite of a prior deposit of the mortgage, provided in §10 of the Chattel Mortgage Act (No. 19, Laws of 1927, p. 490), as amended by Act No. 71 of 1930 (Laws of 1930, p. 448), the Legislature had no other purpose than to render clearer its intention that the rights of the mortgagee should be more effectively protected than formerly.

In the case of *United Porto Rican Bank* v. *González*, *supra*, this court held that an attachment levied on mortgaged cattle before Act No. 71 of 1930 went into effect, without subjection to the interest acquired by the mortgagee in said cattle, was void.

The obligation to deposit the amount of the mortgage which is imposed on the attached creditor, is mandatory. If before such requisite existed an attachment levied without subjection to the interest held by the mortgagee was void,

there can be no doubt that an attachment levied without a compliance with that requisite nor with the mandatory one imposed by the amendment to §10, is likewise void. Moreover, in the instant case no deposit was made, either before or after the levy, if a belated deposit could have been made: a question which we are not deciding.

The requisite of a prior deposit is in harmony with the intrinsic nature of a chattel mortgage, under which the mortgagee becomes to a certain extent the owner of the mortgaged property. In this connection, citation was made in *United Porto Rican Bank* v. *González, supra,* of the following excerpt taken from the case of *Bachrach* v. *Mantel,* 25 Phil. Rep. 410, decided by the Philippine Supreme Court:

"Under the Chattel Mortgage Law the mortgagee becomes the owner of the property in the sense that he has the legal title, the mortgagor having the right to retain possession, to have the beneficial use, and to defeat the title of the mortgagee by compliance with the terms of the mortgage. In a sense, the mortgagee is the legal, the mortgagor the equitable owner."

Since the mortgagee, Arenas, held the legal title to the automobile, Francisco acquired no legal title to the same which he in turn might transfer to other persons, he having failed to deposit the amount of the mortgage.

If to what has been stated above is added the fact established before this court by the documents incorporated in the record by counsel for the appellants, that first José Salgado and then his heirs have been mere nominal parties without any interest in this case, since Salgado long before he died had secured from Miguel Francisco the return of the automobile purchased at the foreclosure sale (incidentally for a lesser sum than the amount of the mortgage credit), and that said counsel admit that their real client in this case has always been Miguel Francisco, it can readily be seen that the plaintiffs were never entitled to demand compensation for damages which they have not suffered.

The motion for rehearing must be denied.