[S. F. No. 1166. In Bank.—March 31, 1899.]

## LOWER KINGS RIVER RECLAMATION DISTRICT NO. 531, Respondent, v. C. J. McCULLAH et al., Appellants.

Reclamation District—Action to Declare Validity of Assessment—Constitutional Law.—Section 349½ of the Political Code, enacted in 1893, providing for an action by a reclamation district to determine the validity of an assessment, and making the judgment conclusive between the parties thereto in any subsequent action upon the assessment, is not special legislation, and gives the property owner the hearing to which he is entitled, and is constitutional and valid.

Id.—Description of Tract Assessed—Legal Subdivisions.—The description of the tract assessed, if including more than forty acres, is not required to set forth separately each smallest legal subdivision of forty acres; but sections 3460 and 3461 of the Political Code only require a description by legal subdivisions, swamp land surveys or natural boundaries of the tract assessed, and to state the number of acres of each tract, the names of the owners of each tract, and the amount of the charge assessed against each tract.

Id.—Clerical Mistake in Description—Number of Section—Identification.—A clerical mistake in the description of a tract assessed, in giving the wrong number to a section, does not vitiate the assessment, where the entire description is such that the mistake is obvious upon a mere inspection of the map or diagram of the tract, and the identification of the land is apparent from the other calls, and a surveyor would have no difficulty in ascertaining the precise land intended.

Id.—Purchase of Rights of Way from Directors—Payment under Prior Assessment.—The purchase of rights of way from the directors of the district which were necessary and were paid for at the same rate per acre as other land-owners were paid whose lands were similarly situated, and were paid from the fund raised for a prior assessment, and not included in the bills for the subsequent assessment in controversy, cannot vitiate the latter.

Id.—Assessment for Work Done and Money Paid by Trustee.—The assessment is not rendered invalid because including payment for outstanding warrants in favor of one of the trustees for work done and money paid by him in the construction of a levee, where his vote was not required or effective for allowance of the same by a majority of the board, and no fraud or unfairness appears in the transaction.

Id.—Action of Director Interested.—A director of a corporation should not act as such or take part in the proceedings of the board at which his claim is either acted upon or under consideration. He should not even appear to take part in a transaction in which he is interested against the corporation.

Id.—Character of Lands Assessed—Manner of Assessment—Bene-
fits—Conflicting Evidence.—The determination by the supervisors
as to the character of the lands included within the reclamation
district is conclusive; but where evidence was allowed on the
question of the character of the lands assessed, as well as upon
the manner of the assessment, and upon the questions of rela-
tive benefits, and of assessment in proportion to benefits, and
the evidence thereupon was conflicting, findings thereupon in
favor of the reclamation district cannot be disturbed upon
appeal.

APPEAL from a judgment of the Superior Court of Fresno
County and from an order denying a new trial. J. R. Webb,
Judge.

The facts are stated in the opinion of the court.

Alfred Daggett, and Daggett & Adams, for Appellants.

Denson & De Haven, Denson & Denson, Denson, Oatman &
Denson, and M. K. Harris, for Respondent.

VAN DYKE, J.—This is an action to have an assessment
for twenty thousand five hundred dollars adjudged to be valid.
It is brought in pursuance of section 3493½ of the Political
Code, a new section enacted in 1893. Plaintiff had judgment
in the lower court as prayed and costs, and the contesting de-
fendants have appealed from the judgment and an order deny-
ing their motion for a new trial. The complaint follows the
form prescribed in the section of the Political Code referred to,
and seems to be sufficient as to its allegations. The answer
denied most of the allegations of the complaint, except as to
the organization of the district and the ownership of the lands
assessed. The findings of the court are against the defendants
upon all the issues presented in the answers.

It is contended on the part of the defendants that the com-
plaint does not state facts sufficient to constitute a cause of
action in that the new section of the Political Code under which
the action was brought is unconstitutional. It is provided by
this new section of the Political Code that "at any time within
one year after the filing of the list mentioned in section 3462
the board of trustees of the district may, in the name of the
district, commence and prosecute an action . . . . to determine

the validity of the assessment. . . . . In an action prosecuted under this section the court shall decree the validity or invalidity of the assessment in accordance with what the court may determine the facts to be." It is provided that the action brought under this section shall not be a bar to or prevent an action brought under other sections of the code for the recovery of money assessed upon lands in a reclamation district; "but the judgment given and made in the action brought under the provisions of this section shall be conclusive between the parties thereto as to the validity or invalidity of the assessment." In *Reclamation Dist. No. 551 v. Sels*, 117 Cal. 164, it is said: "This proceeding is not an action *in personam*, and, while it is not in strictness a proceeding *in rem* either, it partakes rather of the nature of the latter. It is designed as one of the processes to test the legal perfection of an assessment levied by a reclamation district. The property owner is entitled to a hearing at one time or another on the question of benefits. (*Reclamation Dist. v. Evans*, 61 Cal. 104; *Lower Kings River Reclamation Dist. v. Phillips*, 108 Cal. 306; *Hagar v. Reclamation Dist.*, 111 U. S. 701.) Before the passage of section 3493½ of the Political Code he made his showing when action was brought to enforce the assessment. But to obviate the difficulties and delays which thus arose this peculiar proceeding was established. By it is provided a forum before which a property owner may go and make full proof of his objections to the assessment. The final determination of the court upon the matter may be used by or against him in any future action to collect the tax. Thus it gives the property owner the hearing to which he is entitled, but provides that such hearing may take place in advance of an action upon the assessment." There seems to be no doubt expressed by this court in reference to the constitutionality of the new section under consideration, although the question was not expressly raised nor passed upon. The case of *People v. Central Pac. R. R. Co.*, 83 Cal. 393, relied upon by defendants, was where the legislature undertook to prescribe a form of complaint in an action to enforce the collection of a tax. The court there held that the sufficiency of the complaint to recover delinquent taxes must be tested by the rules regulating pleadings in civil actions, and not by section 3670 of the Political Code as it stood

at that date. The complaint in that case was held bad for the reason, among others, that it lacked the elements essential in stating a cause of action. The feature of the act in that case as to special legislation was wholly unlike the section under consideration here. The cases of *Pasadena v. Stimson*, 91 Cal. 238, and *Darcy v. Mayor etc. of San Jose*, 104 Cal. 642, cited by defendants, do not support their contention in this particular. We do not think the new section is unconstitutional.

It is claimed by defendants also that section 3461 of the Political Code requires that in giving a description of the tract assessed the land must be described in the smallest legal subdivision under the congressional system of surveys, which is forty acres. As an example, the description given of the land of defendant Wood is cited as follows: "Tract of parcel No. 13. Owner, George Wood. East half of S. E. quarter, of section 27, township seventeen, and south range twenty-one, containing eighty (80) acres, assessed at 114.01." It is contended that the description should have been the northeast quarter of the southeast quarter, and the southeast quarter of the southeast quarter, et cetera, and that each forty should be separately assessed. The law does not sustain this contention. The list mentioned in section 3460 of the Political Code is of "the charges assessed against each tract of land." Section 3461 of the same code says the list must contain "a description by legal subdivisions, swamp land surveys, or natural boundaries of each tract assessed; the number of acres of each tract; the names of the owners of each tract; . . . . the amount of the charge assessed against each tract." The east half of the southeast quarter is a legal subdivision, although it is not the least subdivision known to our system of surveys, and the law, as already quoted, does not require that the description shall be by the least legal subdivision. *Robinson v. Forrest*, 29 Cal. 318, is not in conflict with this view. The meaning of the act of Congress in respect of making out a list and plats of swamp lands claimed by a state was there under consideration, and it was held that it meant the smallest subdivision, or forty acre lot. This was, however, to determine what lands should be included as wet and unfit for cultivation, where the greater part of any subdivision was of that character. It is the tract as a whole, de-

scribed by legal subdivisions, that is required to be assessed, and the assessment is not required to be carried out against each subdivision, but "the amount of the charges assessed against each tract." (Pol. Code, sec. 3461. See, also, *Swamp Land Reclamation Dist. v. Wilcox,* 75 Cal. 443; *Reclamation Dist. No. 531 v. Phillips, supra.*)  In the last case a description reading "W$^2$ of S. E.$^4$ of sec. 28, Tp. 17," in the assessment list, was held sufficient, as representing the west half of the southeast quarter of section 28, township 17.

It is claimed also by appellant's counsel that the assessment of tract 3 to Hames is void because of misdescription of the land.  The description is as follows: "Beginning at the southeast corner of the north half of the northeast quarter of section thirty-five, township seventeen south, range twenty-one east; thence north on the east line of sections thirty-five and twenty-six in said township, to the intersection of said east line with the line of levee of Lower Kings River Reclamation District number 531; thence along the line of the said levee to its intersection with the line dividing the southeast and southwest quarters of said section twenty-nine; thence south on said quarter section line to the southwest corner of said north half of northeast quarter of said section thirty-four; and thence east to place of beginning, containing one hundred and fifty-five acres."

By a mere inspection of the map or diagram with this description it is apparent that 29 should be 26.  Section 29 is not said section because it has not been mentioned.  Twenty-six is said section and has been mentioned.  Then taking the next call, we find that it runs south on said quarter section line to the southwest corner of said north half of the northeast quarter of said section 35, which renders it absolutely certain that the person who wrote the description intended to correctly describe the land of Mr. Hames, and that 29 was a mistake in the call, and should have been 26.  Read literally, the description goes down the levee several miles to section 29, and to go south on that line section 35 would never be reached; and to go directly from the point in section 29 to the corner in section 35 the line would cut diagonally across several sections and include land other than Hames'; whereas, substituting section 26 for 29 the

description closes and embraces only Hames' land. An exam- ination of the map in the original transcript makes the mistake apparent, and the acreage also corresponds with the description, assuming 26 to have been intended where 29 is written. No surveyor would have any difficulty in ascertaining the precise land intended. It is not a question of a double assessment so much as it is a manifest clerical mistake or blunder in writing one word or figure in place of another; but this does not de- stroy the description, because the identity of the land is ap- parent from the other calls. (*Reamer v. Nesmith*, 34 Cal. 624; *Irving v. Cunningham*, 66 Cal. 15; *Helm v. Wilson*, 76 Cal. 476.) Appellants' counsel, however, contend that the rule applicable to the description of a deed will not hold as to an assessment. We can see no reason for such a distinction; the main point is to have the land described so that its identity can be ascer- tained.

It is charged also that the trustees perpetrated frauds in the management of the affairs of the district, among these in the purchase of rights of way from themselves. The rights of way were necessary and paid for at the same rate per acre as other landowners were paid whose lands were similarly situated. It also appears that the warrants were drawn and paid from the fund raised from the first assessment and not included in the bills for the second assessment now in question. Some other claims were also paid from the first assessment, which are chal- lenged.

The pertinent inquiry, however, is, Is the present assessment necessary to meet the debts of the district and to carry out the necessary improvements contemplated? In their reports to the board of supervisors the trustees stated that there were out- standing debts, which, with accrued interest and the expenses of collecting and assessing, would amount to sixteen thousand five hundred dollars, for repairs, care of levees, material, super- intendence, et cetera, the estimated amount required being four thousand dollars, making twenty thousand five hundred dol- lars, for which the assessment was approved and ordered. Representing a part of the unpaid indebtedness are certain out- standing warrants stated in the report to be fourteen thousand two hundred and eighty-six dollars and forty-one cents, exclu-

sive of interest.   Certain warrants were issued to trustee Paige, aggregating six thousand three hundred and five dollars and sixty-one cents.   A small part of this is for traveling expenses, and *per diem* attendance upon the board, the balance being for money advanced by Paige to pay for work done on the levees by different persons, some part of which work was done by his own men and teams.   The work done by him was recommended by the engineer as necessary and was reported to the board. The district was without funds, and the work was done under the supervision of the engineer.   In the engineer's report he says, referring to this work: "I have just examined the work finished by Mr. Paige's force, and find they have done most excellent and I think efficient work where they have made repairs. The riprapping is the most thorough work of the kind ever done upon the river."   The bills presented by Paige, and for which warrants were issued, received the approval of the full board.

The minute entry reads as follows: "It was moved by Parkhurst and seconded by trustee Ray that the bill of T. Paige for services on the levee, amounting to four thousand five hundred and twenty dollars and forty-eight cents, be paid by a warrant drawn on the funds of the district.   After a careful examination of the said bill the motion was unanimously carried by trustees Ray, Parkhurst, and Paige voting in the affirmative." There is no evidence to show that the work was unnecessary or not well done, nor is there any evidence that trustee Paige derived any profit from the same.   In other words, there is no actual fraud shown in the transaction, but it is contested on the ground of constructive fraud, in that a trustee cannot deal with himself and that the corporation may at any time avoid the transaction, whether it be fair or unfair, advantageous or prejudicial.

The rule is expressed in our Civil Code, section 2229: "A trustee may not use or deal with the trust property for his own profit, or for any other purpose unconnected with the trust, in any manner."

In *Reclamation Dist. v. Turner*, 104 Cal. 334, two out of the three trustees were interested in the old levee purchased by and for the use of the corporation district, and, in passing upon

the question now under consideration, the court in that case say: "It may be conceded that if one of the trustees was interested in the old embankment, the action of the others could be sustained in any purchase that might be made of them by the district; but it would be turning a very sharp corner for James to say to White, 'You and Mr. Hoyl fix the value on my embankment and buy it for the district, and he and I will buy yours,' as each would be interested to increase the price of the other's property in order to increase the price of his own; and if condemnation proceedings are resorted to, they would be defendants while prosecuting the proceedings on behalf of the district. If we are right in holding that the old embankments can be acquired by the district and used as part of the reclamation works, we think it must follow that, since all in the district are not owners of embankments, that at least a majority of the board of trustees must be composed of nonowners of such embankments." By indirection this case seems to hold that one out of three trustees might be interested in dealing with the corporation, so that a majority remain uninterested and capable of acting in the premises. *Wickersham v. Crittenden,* 93 Cal. 17, was a case where the defendant, as president of a bank, helped to vote himself an increase of salary, and the court, after stating the general rule that it was against public policy to permit persons occupying fiduciary relations to be placed in such a position that the influences of selfish motives may be a temptation so great as to overpower their duty and lead to a betrayal of their trust, and therefore that they cannot be allowed to have any dealings in the trust property with themselves, adds: "Nor can they in any instance vote a salary to one of their number as president when he takes part in the proceeding, or his vote is essential to the adoption of the resolution"; again intimating that if his vote were not essential the transaction would not be invalid. The case of *Wickersham v. Crittenden* was again before the court in the 106 Cal. 327, in which it is said, the fact fully appears from the evidence "that the increased salary of the president depended upon and was accomplished by his own vote as a trustee," referring to the former opinion in the same case in 93 California, and repeating the declaration there contained that Crittenden could not take part in a pro-

ceeding where his vote was essential to the adoption of the resolution raising his own salary. And in 110 Cal. 332, *Wickersham v. Crittenden* was again before this court. In the mean time, a resolution was adopted by other directors, by which they "ratified, approved, confirmed, and adopted" the former resolution fixing the salary of the president. On page 334 of the opinion it is said: "In the case reported in 93 Cal. 17, it was held that the original resolution adopted at the meeting of directors of December 12, 1890, fixing the salary at four hundred dollars, was illegal. The resolution was, however, adopted by the board of directors of the corporation and was spread upon its records, and on its face purported to be an authentic and sufficient act of the corporation. Its invalidity arose from the fact that Crittenden, whose vote was essential to its adoption, was personally interested in the subject matter of the resolution, and therefore disqualified from voting thereon. The resolution was, however, within the power of the corporation to adopt, and, though invalid at the time it was adopted, could be subsequently ratified by a competent board of directors or could be adopted anew, either by reference to it as it was spread upon the records, or by introduction as an original resolution."

In *San Diego v. San Diego etc. R. R. Co.*, 44 Cal. 106, the question of a director dealing with himself was under consideration, and, after laying down the general rule as already briefly stated, the court say: "We do not doubt that a majority of the trustees might execute the power, but the question is whether Sherman, who was a stockholder and director, could be one of that majority."

Morawetz, in speaking of the rule disqualifying a director from dealing in any way with the corporation of which he is agent, says: "It is never necessary that all the directors should take part in the deliberations of the board. The general rule is, that a majority of the board constitute a quorum for the transaction of business, and that a majority of those who attend the meeting, at which a quorum are present, have authority to bind the corporation by their vote. There is no necessary impropriety in a contract between a director and a corporation, if the latter is represented by other agents. On the contrary, such contracts are, in many cases, the natural result of circum-

stances, and are justified by the approved usages of business men. The directors of a corporation are generally selected by reason of their influence or wealth, and because they are interested in the success of the company and familiar with its affairs. Not infrequently persons who agree to advance money to the corporation expressly stipulate for a voice in the board of directors, so that they may be able to supervise the faithful application of the money advanced, and keep watch for their own security. To prohibit the directors, in all cases, from dealing with the corporation would often deprive the latter, in time of need, of the assistance of those persons who have the greatest interest in its welfare and who are willing to give their time upon the most reasonable terms. But a transaction between a director and the corporation, even if the latter was represented by a majority of the board, will always be scrutinized by the court with strictness and will be set aside at the suit of the corporation, upon proof of the slightest unfairness or imposition practiced upon it." (Morawetz on Corporations, sec. 527.)

Many other cases are referred to in the briefs of respective counsel bearing upon this question, but we think the foregoing fairly present the rule that is applicable to the case, and in view of the fact, as already stated, that no actual fraud was shown in the transaction between the director in question and the corporation, we would not be justified in holding that his claim for services and money advanced is invalid, and not entitled to be allowed. At the same time it may be pertinent here to add that a director should not act as such, or take part in the proceedings of the board at which his claim is either acted upon or under consideration. His vote adds nothing to it. Besides, it is unseemly for a trustee to even appear to take part in a transaction in which he is interested against the corporation or *cestui que trust.*

The contesting defendants also contend that their lands are not swamp land within the meaning of the law for the organization of reclamation districts, or, at any rate, the greater portion of their lands is not of that character. The allegation in the complaint in reference to the formation of the district is not denied. Therefore, there seems to be no issue upon that question. In the formation of the district the supervisors were

required to determine the character of the lands, and whether they were of the class to be included within a reclamation district under the law, and their action, to that extent is held to be conclusive. (*Lower Kings River Reclamation Dist. No. 531 v. Phillips, supra.*) But, notwithstanding this, the court below afforded full opportunity to the contesting defendants to offer proof, not only in reference to the character of the land, but also as to the relative benefits arising from the reclamation proceedings. It appears from the transcript that a large amount of evidence was offered, both by the defendants contesting and also on behalf of the corporation district, bearing upon the character of the land, as well as upon the manner of assessing the same, and the question of relative benefits, and whether such assessment was in proportion to the benefits. And the findings of the court on all these questions are in favor of the plaintiff corporation and against said defendants. From an examination of such testimony it clearly appears that the most that can be said in favor of said defendants is that there is a substantial conflict in such testimony; but there is evidence sufficient to support the findings, and, that being the case, this court will not, under well-established rules, interfere with such findings.

Upon an examination of the whole case we are of opinion that the judgment of the court below establishing the validity of said assessment, and the order denying the appellants' motion for a new trial, should be affirmed; and it is so ordered.

Henshaw, J., McFarland, J., Harrison, J., and Garoutte, J., concurred.