[Sac. No. 1784.   Department Two.—January 10, 1911.]

# RECLAMATION DISTRICT NO. 70, Respondent, *v.* JOHN BIRKS, Appellant.

RECLAMATION DISTRICT—INVALIDITY OF ASSESSMENT—PERSONAL INTEREST OF TRUSTEES.—In an action by a reclamation district to enforce the lien of an assessment levied by it for purposes of reclamation, the defendant is entitled to show, in support of his defense that the assessment was invalid, that the trustees of the district by whom it was levied, were disqualified from acting in the matter by reason of their direct and pecuniary personal interest.

ID.—SALE OF PROPERTY BY TRUSTEES TO DISTRICT—PAYMENT OF DEBTS OF FORMER DISTRICT HELD BY TRUSTEES.—The invalidity of the assessment, by reason of the personal interest of the trustees, can be shown by evidence that a majority of the trustees of each board, and the only ones who acted, were directly and financially interested in certain of the property that it was proposed to purchase, in that they proposed to sell certain of their own lands to the plaintiff, and that the plaintiff should ostensibly buy the property of the other district of which they were trustees for a price which they would name, to the end that the debt of such district, of which they were heavy creditors, might be paid.

ID.—TRANSACTIONS BETWEEN DISTRICTS HAVING DIRECTORS IN COMMON.—
Where an assessment by a reclamation district is levied for the
purpose of acquiring property belonging to another district, no
presumption of illegality or unfairness attaches merely from the fact
that a majority of the board of trustees of the district whose prop-
erty was to be purchased constituted a majority of the trustees of
the other district, and that these districts had, or proposed to have,
business dealings with each other through their boards of trustees.
No such presumption arises merely because two corporations which
have certain directors in common deal with each other.

ID.—NATURE OF RECLAMATION DISTRICTS—PUBLIC AGENCIES.—Reclama-
tion districts are not, in strictness, corporations at all, but *quasi*
corporations, or public agencies to carry out a specific purpose, the
agency ceasing with the accomplishment of the purpose.

ID.—CHANGE OF BOUNDARIES OF DISTRICT—INCLUSION IN NEW DIS-
TRICT.—Subject to existing constitutional limitations, the power of
the legislature over reclamation districts is plenary; it may divide,
change, or modify them at pleasure; the beneficial title to all the
property owned by the district is in the state, and when, by the
change of boundaries, this property falls within a new district, such
title still remains in the state, and, in legal contemplation, the state
has merely placed the legal title in the hands of other trustees to
manage it.

ID.—ASSESSMENT NOT AUTHORIZED TO BUY PROPERTY OF OLD DISTRICT.—
A new reclamation district, the boundaries of which included the
property of a former district, has no power to levy an assessment
for the purpose of purchasing property which was owned by the
former district, and which had passed to the new.

ID.—DEBTS OF OLD DISTRICT—EXISTENCE OF LIEN—IMPAIRMENT OF
RIGHTS OF CREDITORS.—In the absence of any provision for the pay-
ment of the existing debt of the old district, the debt still remains
against it, and the lien thereof is a lien against the real property of
the old district, and cannot be made a lien upon all the other property
embraced in the new district. The extinguishment of the existence
of the old district could not, even if the legislature so designed,
operate to impair any of the rights of the creditors of the old dis-
trict which were in existence at the time of the creation of the new,
nor so completely destroy its existence as to render the claims of its
creditors unenforceable against it.

ID.—LIEN OF DEBTS OF OLD DISTRICT—PROPERTY OF NEW DISTRICT NOT
SUBJECT TO LIEN—ASSESSMENT TO PAY OLD DEBT.—Where a debt
has been imposed upon the property of a *quasi* municipal corpora-
tion, such as a reclamation district, which is to be paid by the
owners of the property within the district in proportion to the
benefits which their land receives from the work done, it is not
within the power of the legislature to transfer and impose this
debt upon property not within the district at the time the original

obligation was created, and which was not benefited by the work done. When an assessment is to be made for the extinguishment of such debt, only the property of the old district benefited or supposedly benefited by the work which the indebtedness represented would be legally assessable for such debt.

ID.—PRESUMPTION OF BENEFIT TO PROPERTY WITHIN DISTRICT.—NON-BENEFIT CANNOT BE SHOWN TO DEFEAT ASSESSMENT.—Under the system prevailing in this state for the assessment of lands within a reclamation district, by which the collection of the assessment for works of problematical value may be enforced in advance of the work itself, all of the land within the limits of the district created by the legislature is conclusively presumed to be land which will be benefited by works of reclamation, and an owner of land within the district cannot, *pro tanto,* defeat an assessment levied upon all of his land, by showing that a part thereof is so situated that it cannot be benefited by the work.

ID.—RECLAMATION DISTRICT NO. 70—ASSESSMENT ACCORDING TO POLITICAL CODE.—Section 2 of the Act of 1905, creating Reclamation District No. 70 (Stats. 1905, p. 717), and providing that "the management and control of said reclamation district is hereby made subject to the provisions of the Political Code of the state of California, and other laws of this state, relative to reclamation districts formed under the provisions of said Political Code," confers upon such district the power of assessment in accordance with the provisions of that code.

APPEAL from a judgment of the Superior Court of Sutter County. K. S. Mahon, Judge.

The facts are stated in the opinion of the court.

Arthur C. Huston, for Appellant.

A. H. Hewitt, and A. L. Shinn, for Respondent.

HENSHAW, J.—This is an action by plaintiff against a property-owner within the district, to collect an assessment levied for purposes of reclamation. Reclamation District No. 70 is a legislative creation. It came into existence in 1905, and embraces within its limits Swamp Land District No. 70 and other land which it is alleged was territory of Reclamation District No. 763 (Stats. 1905, p. 717).

Judgment pass___ for plaintiff and the defendant Birks appeals.

Certain of the objections which he presents to the enforce-

ment of the assessment go to asserted illegality in the creation of the district itself. These objections are satisfactorily answered by *Reclamation District No. 70* v. *Sherman,* 11 Cal. App. 399, [105 Pac. 277], where, under a like effort to collect the same assessment, the questions came under review. They require no further discussion here. It is urged, however, that the assessment is illegal for grounds and reasons not presented in the Sherman case and therefore not considered by the court of appeals, and these merit attention.

Tarke and Summy were trustees of Swamp Land District No. 70 ("Old 70"). They were also trustees of plaintiff. Appellant undertook to show that Mr. Peck, the engineer, who presented the report and plan of the proposed reclamation operations of plaintiff, was appointed by these trustees; that part of this proposed plan was the payment of eighteen thousand dollars for the rights of way and levees belonging to Old 70; that the board of supervisors having no power to reject, revise, or modify such proposed plan (Pol. Code, sec. 3455; *Reclamation District 535* v. *Clark,* 155 Cal. 345, [100 Pac. 1091,]) were compelled to and did adopt the plan which thus embraced an assessment of eighteen thousand dollars for the purchase of this property belonging to Old 70; that Messrs. Tarke and Summy were owners of warrants issued by Old 70 to the amount of many thousands of dollars; that the purpose of the provision for the purchase of the property of Old 70 for eighteen thousand dollars was to enable Messrs. Tarke and Summy to secure the payments of their warrants issued by Old 70, the validity of which was in question and doubtful; that these trustees of Old 70 fixed the price at which the property of Old 70 would be sold by Old 70 to plaintiff, and that these trustees constituted a majority of the board of trustees of Old 70 which was to sell, and of plaintiff which was to purchase; that in furtherance of their design, when the assessment was levied by plaintiff, these trustees surrendered the warrants of Old 70 held by them and received therefor warrants of plaintiff, the exchange being made through their own action as trustees of plaintiff. In addition, appellant sought to show further direct and pecuniary interest upon the part of the trustees Tarke and Summy by establishing that they had deeded rights of way to the plaintiff, for which rights of way they were to be paid by moneys raised under the assess-

ment contemplated by the plan of the engineer selected and appointed by them. To much of the testimony thus sought by appellant to be introduced the court sustained objections. Appellant contends that its defense against the validity of this assessment was thus unduly restricted, and that it was denied its right to show that these trustees were disqualified from acting because of their personal interest in the matter, which personal interest was direct and pecuniary. We entertain no doubt but that the defendant should have been allowed to make this proof. (*Reclamation District* v. *Turner,* 104 Cal. 334, [37 Pac. 1038] ; *Reclamation District* v. *McCullah,* 124 Cal. 175, [56 Pac. 887].) No presumption of illegality or unfairness attaches merely from the fact that Messrs. Tarke and Summy were trustees of both districts and that these districts had, or proposed to have, business dealings with each other through their boards of trustees. No such presumption arises merely because two corporations which have certain directors in common deal with each other. (*San Diego* v. *Pacific Beach R. R. Co.,* 112 Cal. 53, [33 L. R. A. 788, 44 Pac. 333].) The gravamen of the matter here is that it was sought to be shown that these trustees, who constituted a majority of the boards and were the only ones who acted, were directly and financially interested in certain of these transactions, that they proposed to sell certain of their own lands to plaintiff, that they proposed that plaintiff should ostensibly buy the property of the old district of which they were trustees for a price which they would name to the end that the debt of the old district, of which they were heavy creditors, might be paid.

But this discussion need not be elaborated, for the reason that, regardless of the disqualification of the trustees in fixing the price and attempting to purchase the properties of Old 70, the assessment is invalid, because by the assessment a lien was imposed upon the lands of appellant within plaintiff district for the purpose of purchasing property which was owned by the district and could not therefore be bought. In *People* v. *Sacramento Drainage District,* 155 Cal. 373, [103 Pac. 207], the question of the political character of these reclamation districts is discussed in the light of the former decisions of this court, and it is held that they are, in strictness, not corporations at all, but *quasi* corporations, "rather governmental agencies to carry out a specific purpose, the agency ceasing with

the accomplishment of the purpose." Their political character
and *status* is similar to that of school districts. In the recent
case of *Pass School District* v. *Hollywood,* 156 Cal. 416, [26 L.
R. A. (N. S.) 485, 105 Pac. 122], this court was called upon to
determine the ownership of the property of a school district,
which by the legal annexation of certain land had passed into
another school district. It was contended that the property
having been paid for by the inhabitants of the school district
in which it was originally situated, title to it still remained
in the original district, with the right in that district of leasing
or selling it. But by this court it was pointed out that school
districts are like reclamation districts, *quasi* municipal corpora-
tions, and that, subject to such constitutional limitations as
may exist, the power of the legislature over them is plenary;
that the legislature may divide, change or abolish them at
pleasure; that the beneficial title to all the property owned by
the district is in the state and that when, by the change of
boundaries this property falls within a new district, the bene-
ficial title still remains in the state and, in legal contemplation,
the state has merely placed the legal title in the hands of other
trustees to manage it. It is said: "The legislative power being
full and complete over the matter, as a part of that power it
may make provision for the division of the property and the
apportionment of the debts of the old corporations when a
portion of its territory and public property are transferred
to the jurisdiction of another corporation, but in the absence
of such provision the rule of the common law obtains, and that
rule leaves the property where it is found and the debt upon
the original debtor." The principle and the rule are the same
in the case at bar. The legislature in creating the plaintiff
and embracing within its territorial limits all of Old 70, vested
the legal title of the properties of Old 70 in the plaintiff, and
upon the trustees of plaintiff devolved the future management
of that property. Having made no provision for the existing
debt of Old 70, that debt still remains a debt against Old 70,
and the lien is a lien against the property of Old 70. The
absorption of Old 70 by plaintiff, and, to that extent, the
extinguishment of the existence of Old 70 could not, of course,
even if the legislature so designed (and it is not to be supposed
that it did so design) operate to impair any of the rights of the
creditors of Old 70 which were in existence at the time that

plaintiff was created. Nor would it be permissible for the legislature so completely to destroy the existence of Old 70 as to render the just claims of its creditors unenforceable against it.

In the case of reclamation districts, the operation of this rule of law works no individual hardship. If the reclamation work which Old 70 did was of value before its absorption into the new district, it became of no less value by the change of management. The property-owners of Old 70 are still receiving all the benefits which may follow the works of reclamation which they constructed, and it is but just that they should be called upon to do what originally they undertook to do,— namely, to pay for those works. Upon the other hand, it would be most manifestly unjust, if not illegal, to impose upon all of the land of the new district the cost of the reclamation works which had been constructed by the old district. The old district forms but a part of the territory of the new district. Much of the land of the new district could not be benefited by the reclamation works of the old district, and to declare that the debt of the old district was a debt of the new, or to do, in effect the same thing as the trustees here undertook to do, by purchasing the property of the old district, would result in imposing a lien upon lands under the guise of special benefits, which lands could, in the very nature of things, receive no benefit from the work. To illustrate: Conceive the case where a reclamation district has incurred an indebtedness for reclamation works which have proved inefficient and abortive; the debt remains, and the work is entirely without benefit, even to the district which ordered it. If by the creation of a new district, embracing the territory of the old, it were sought to be held that the debts of the old district, by operation of law, became the debts of the new, it would result in imposing a *pro rata* proportion of that debt upon land never within the scheme of reclamation when the debt was incurred—land which was not in fact benefited, and which it was never in contemplation could be benefited. Thus gross wrong would be perpetrated upon property-owners, in absolute violation of the law which justifies the imposition of this species of tax burden solely upon the theory that their land will derive a commensurate amount of benefit from the work for which the assessment is levied.

There is no denial in this of the power of the legislature

to apportion indebtedness where the boundaries of municipal or *quasi* municipal corporations have been changed, where one has been absorbed by another, where two or more have been consolidated, or where a different class or kind of municipal corporation has been created which comprises the territory of a formerly existing corporation.    (28 Cyc. 175 et seq.)    The *principle which is here announced is simply this, that where a* debt has been imposed upon the property of a *quasi* municipal corporation such as a reclamation district, which debt is to be paid by the owners of the property within the district in proportion to the benefits which their lands receive from the work done, it is not within the power of the legislature to transfer and impose this debt upon property not within the district at the time the original obligation was created, and which was not benefited by the work done.    Thus it may be conceded that the legislature would have the power in such a case as this to impose the obligation of the debt of Old 70 upon New 70, but this transfer of the indebtedness would not make it a lien upon all the property of New 70, and when an assessment came to be made for the extinguishment of the debt, *only the property of Old 70 benefited or supposedly benefited* by the work which the indebtedness represented would be legally assessable for this debt.

While what has heretofore been said results in the necessary determination that the assessment is invalid, in contemplation of another assessment or like assessments, it is proper to notice a contention made touching the invalidity of this assessment, not as a whole, but *as levied upon particular tracts of land.* By way of illustration, but not in accordance with the precise facts, the question may be thus stated :    A owns a tract of land of 500 acres ; the assessment is levied upon his whole 500 acres at the rate of three dollars an acre for the benefits to arise from the proposed work.    He undertakes to show that of the 500 acres, 100 acres is of high land of such character that it needs no reclamation work of any kind, and consequently cannot be benefited by any reclamation work which may be done within the district.    He contends, therefore, that as all of his land has been assessed for benefits at the rate of three dollars an acre, under these circumstances it necessarily results that certain of his lands, being non-assessable because deriving no special benefit, have been unlawfully assessed and an unlawful lien

imposed upon them, and, also, that the aggregate assessment imposed upon all of his lands at the rate of three dollars an acre—namely, fifteen hundred dollars—is in excess of the amount justly chargeable, since but 400 acres should have been assessed at the same rate.

In answer to this, it may be freely said, and it is a matter much to be deplored, that inequalities and injustices in individual cases do result, and must necessarily result, from the operation of the general scheme of assessments for special benefits adopted in this state. Since the state, itself, can exercise this power to specially tax only, because in theory the moneys raised by the tax will be expended for a direct benefit to the land equal in value to the amount of the tax, it would logically follow that when the proposed improvement is completed and it is apparent that the property has received no benefit from it, the tax itself should fall. In some jurisdictions this is recognized so that the assessment is collected only after the work is completed and the benefits are actually demonstrated. If by inherent defect in the plan, or from similar cause, the work prove abortive and of no benefit, the state bears the burden. But under our system the collection of the assessment for works of problematical value may be enforced in advance of the work itself, and if the work should prove a failure the property-owner is remediless. Many hardships have resulted, and must result, while the prevailing system is in force in this state. But in the particular matter here the subject of inquiry, the injury is apparent rather than real. All of the land within the limits of the reclamation district created by the legislature is conclusively presumed to be land which will be benefited by works of reclamation. In the case of street work the assessment is upon frontage regardless of the depth of the lot. Thus, a man whose lot is of 50 feet frontage and 50 feet depth is assessed as much as the man whose lot has 50 feet frontage and 500 feet depth. So, in the present instance, in the view of the commissioners, A's land was benefited to the extent of fifteen hundred dollars. They treated this tract of land as a whole and assessed it at three dollars an acre upon 500 acres instead of assessing it for $3.75 an acre upon 400 acres. We do not think the assessment illegal because of the method adopted.

Section 2 of the act creating plaintiff (Stats. 1905, p. 717) provides that " the management and control of said reclama-

tion district is hereby made subject to the provisions of the Political Code of the state of California, and other laws of this state, relative to reclamation districts formed under the provisions of said Political Code." It is said by appellant that this is the only language in the act which bears upon the question of the power to assess, and this is true. It is contended that the section quoted is not broad enough to confer upon plaintiff the power of assessment. With this we cannot agree. There is no function which a reclamation district has the power to perform, saving that of the preliminary election of its trustees; there is no work it can do; there is no management and control for it to exercise, unless it can raise money by assessment for the purpose of its creation, and upon most obvious considerations therefore, it must be held that when the legislature declared that the management and control should be exercised in subordination to the provisions of the Political Code, and as in that code is found a complete scheme of assessment, which scheme was here followed, the assessment in question was in the power of the plaintiff to levy.

No other propositions seem to call for consideration.

The judgment and order appealed from are reversed and the cause remanded for further action.

Melvin, J., and Lorigan, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.