[Civ. No. 1979.   Third Appellate District.—July 18, 1919.]

# RECLAMATION DISTRICT No. 785, by THEO. BLAUTH et al., Trustees, Respondent, v. LOVDAL BROTHERS COMPANY (a Corporation), et al., Appellants.

[1] RECLAMATION DISTRICTS — COLLECTION AND PAYMENT OF ASSESSMENTS IN INSTALLMENTS—CODE PROVISION MANDATORY.—The provision of section 3466 of the Political Code requiring assessments of reclamation districts to be collected and paid in separate installments is mandatory, and boards of trustees of reclamation districts have no discretion to determine whether an entire assessment shall be made collectible and payable at one time or in separate installments. The only discretionary power vested by the section in that connection relates to the amounts of the installments and the times of their payment.

[2] ID.—ASSESSMENT LAWS IN INVITUM — SUBSTANTIAL COMPLIANCE NECESSARY.—The assessment of lands for reclamation purposes is a species of taxation, and the rule that all laws authorizing the taxation of the property for public purposes are *in invitum*, and their provisions, therefore, to be strictly construed and pursued, or at least substantially so, is no less applicable to a case of an assessment of lands in reclamation districts for reclamation purposes than to laws authorizing the taxation of property for general governmental purposes.

[3] ID.—SPECIFICATION OF MANNER OR METHOD OF COLLECTION—SUBSTANTIAL DEPARTURE—ASSESSMENT ABORTIVE.—Where the provisions of law by authority of which districts are formed for the purpose of reclaiming lands situated therein specify the manner or the method of assessing such lands for the purposes of raising funds with which to carry out the purposes of the district, such manner or method of proceeding must be observed with substantial strictness. A substantial departure from the method specifically pointed out by the statute for raising the money for the purposes of the district will render the assessment abortive.

[4] ID.—INSTALLMENT REQUIREMENT — SUBSTANTIAL PROVISION.—The right of the owners of lands within reclamation districts to have assessments levied against such lands for the purposes of such districts made collectible and payable in separate installments is a substantial one expressly given to them by the legislature for their benefit and convenience.

[5] ID.—ACTION TO FORECLOSE LIEN—INSUFFICIENT COMPLAINT—DEMURRER—TRIAL—EVIDENCE—NONSUIT.—The complaint in an action to foreclose the lien of an assessment levied for reclamation purposes fails to state a cause of action where it shows that the

trustees attempted to call in the entire assessment at one time, instead of calling the assessment in separate installments. Where a demurrer to such complaint is overruled and the cause tried, and the evidence at the trial shows that the trustees failed to order the assessment to be collected and paid in separate installments, a motion for nonsuit should be granted.

[6] Id.—Action to Validate Assessment—Lis Pendens.—In an action under section 3493½' of the Political Code to determine the validity of an assessment levied for reclamation purposes, it is not necessary to file a notice of the pendency of the action.

[7] Id.—Summons—Compliance With Code Section—Jurisdiction.—In an action under section 3493½' of the Political Code to determine the validity of an assessment levied for reclamation purposes, the omission to direct in the summons, as required by said section, that the defendant "answer the complaint within ten days after the service of summons, if served within the state," does not deprive the court of jurisdiction where the summons issued and served directs the defendants to answer the complaint within ten days "if served within the county—if served elsewhere within thirty days."

[8] Id.—Nature of Judgment—Subsequent Purchasers.—The action in a validation suit being *in rem*, the judgment is binding upon the lands assessed and concludes all subsequent purchasers.

[9] Id.—Judgment in Validation Suit — Evidence — Waiver of Estoppel.—In an action to enforce the payment of an assessment levied for reclamation purposes, the plaintiff does not waive the estoppel created by the judgment in a previous validation suit by introducing evidence in support of the issue raised in that suit.

[10] Id.—Price of Work—Estimate and Price Paid—Determination of Price and Confirmation in Validation Suit—Res Adjudicata.—Where a land owner, although duly notified of an action to determine the validity of an assessment levied for reclamation purposes, defaults or makes no appearance therein, he cannot, in a subsequent action to enforce the assessment against his property, show that the price paid for certain work was in excess of the estimated cost thereof, the question of the price of such work having been determined by the trustees of the district and the supervisors of the county and their determination confirmed by the validation suit.

[11] Id.—Validation Suit—Judgment Res Adjudicata.—The judgment in an action under section 3493½' of the Political Code to determine the validity of an assessment levied for reclamation purposes is *res adjudicata* as to all matters contained in the statement or report to the supervisors by the trustees showing the plan of the proposed reclamation work and estimates of the cost thereof, and is not subject to collateral attack.

[12] Id.—Improper Use of Funds — Validity of Assessment.—An assessment for reclamation purposes cannot be declared invalid because the trustees of the reclamation district have misused a part of the money in payment of a judgment obtained against them individually.

APPEAL from a judgment of the Superior Court of Yolo County. W. A. Anderson, Judge. Reversed.

The facts are stated in the opinion of the court.

Chauncey H. Dunn and A. C. Huston for Appellants.

C. W. Thomas, Driver & Driver, B. F. Van Dyke and G. W. Bedeau for Respondent.

HART, J.—The action was brought to foreclose an assessment lien. It is stated in respondent's brief:

"The respondent district is situated in the county of Yolo, state of California, and was organized as a reclamation district on the 29th day of May, 1908. On the 6th day of July, 1908, respondent levied an assessment of $132,000.00 over all the lands in the district. Shortly thereafter an action was brought by said respondent under section 3493½ of the Political Code of this state to validate said assessment, and on the 5th day of October, 1908, a judgment was entered in the validation suit in respondent's favor.

"At the time of the organization of the respondent district, and until after the judgment in the validation suit, Lovdal Brothers Company, a corporation, one of the defendants in this action, was the owner of the lands upon which this action was brought to foreclose a lien. Thereafter said Lovdal Brothers Company, a corporation, sold said land to W. E. Lovdal. While W. E. Lovdal was the owner of said lands and in 1914 the respondent district brought this action to foreclose the assessment lien upon said land amounting to the sum of $17,601.07, together with interest on said sum. Thereafter said W. E. Lovdal died and the defendants, Ovedia A. White, Emma T. L. Beardslee and Katherine B. Fisk, executrices of the last will and testament of said W. E. Lovdal, deceased, were duly substituted by the trial court as defendants.

"The complaint in this action to foreclose the lien sets forth the statutory requirements of such a complaint. Ap-

pellants (executrices) in their answer denied that the assessment was valid, that the assessment was due or payable or that a call of the assessment had ever been made, and alleged as a separate defense that part of the moneys of said assessment was paid out for purposes other than reclamation, to wit, to pay for a judgment obtained against the trustees individually and for their individual negligence, and to pay for the purchase of the front levee owned by the trustees themselves.''

The cause was tried by the court, findings and judgment were in favor of plaintiff, and the appellants, executrices, prosecute this appeal from the judgment.

[1] 1. It is first urged by appellants that the court erred in overruling their demurrer to the complaint and in denying their motion for a nonsuit at the close of plaintiff's testimony, on the ground that the complaint showed upon its face and that plaintiff's evidence showed ''that the trustees had never called in said assessment in separate and distinct installments, but had attempted to call in the entire assessment at one time.''

Section 3466 of the Political Code, at the time of the levy of the assessment in question, read, in part, as follows: ''At the end of thirty days, the treasurer must return the lists to the board of trustees of the district, and all unpaid assessments shall bear legal interest from the date of the return of the lists to said board, and shall thereafter be collected and paid in separate installments, of such amounts, and at such times, respectively, as the board, from time to time, in its discretion, may, by order entered in its minutes, direct; and a cause of action for the collection of any such installment shall accrue at the expiration of twenty days from the date of the order directing its payment; *provided,* that if any such installment shall remain unpaid at the expiration of said twenty days, then the whole of the assessment against the land owned by the person failing to pay such installment shall become due and payable at once, and may, in the discretion of the board, be collected immediately, in one and the same action. The board of trustees of the district must commence actions for the collection of such delinquent installments, and delinquent assessments,'' etc.  (Stats. 1891, p. 288.)

The respondent contends that the provision of the said section requiring the assessments to be collected and paid in installments is merely directory, or, in other words, that it rests in the discretion of the board of trustees of reclamation districts to order the collection and payment of the assessments either as a whole or in installments. We cannot give our assent to that contention.

Prior to its amendment by the legislature of 1891 (Stats. 1891, p. 288), the section made no provision for the collection and payment of assessments in separate installments. "This law," said the supreme court, in *Swamp Land Dist. No. 307* v. *Glide*, 112 Cal. 85, [44 Pac. 451], speaking of the section as it existed before its amendment in 1891, "was found to be inconvenient, as it required the whole assessment to be paid at once, when the money could only be used from time to time," and the court proceeded to say that it was to remedy this difficulty that the legislature of 1891 so amended the section as to require the collection and payment of assessments to be made in separate installments. Of course, it is to be understood from this language that the inconvenience following from the enforcement of the section as it formerly read was that suffered by the land owners in the reclamation districts and not by the districts themselves or their officers, for it was undoubtedly found to be true that large bodies of land embraced within the reclamation districts of the state were, in many cases, owned by single individuals in severalty, and that it imposed upon such land owners a very onerous burden to require them to pay the whole of large assessments at one time. Indeed, it is generally known that, in many instances, assessments for reclamation purposes often call for the payment of such large sums of money that land owners often find it exceedingly inconvenient, if not impossible, to pay the whole amount of the assessments at one time. By these considerations the legislature was unquestionably prompted in so amending the law that the work of reclamation might be facilitated in reclamation districts formed and organized under the laws of the state with as little inconvenience to the land owners upon whom the burden in such cases was thrown as possible. The theory and the purpose of the provision are the same as those at the bottom of the law authorizing the collection of county taxes

in two separate installments, each at a different time of the year, viz., for the convenience of the taxpayers. It would not for a moment be contended that the board of supervisors could require the collection of county taxes or that the tax collector could enforce their collection in whole at one time or in one installment. That is a substantial right of which the taxpayers cannot be legally deprived against their consent, and so here. The provision requiring or authorizing the assessments to be collected and paid in separate installments involves the granting or giving to the land owners of a substantial right, and, while undoubtedly they themselves may waive it and pay the assessments levied against their lands in full at one time, they are, nevertheless, entitled to claim and invoke it. We cannot, therefore, agree with respondent that the language of the section as to the collection and payment of the assessment in separate installments is merely directory, and is justly subject to the interpretation that the trustees of the district are thereby given the discretion to determine whether the entire assessment shall be made collectible and payable at one time or in separate installments. Indeed, the language of the section in that particular is strictly mandatory. The only discretionary power vested by the section in that connection relates to the amounts of the installments and the times of their payment.

A law authorizing the assessment of land for reclamation purposes in duly formed and organized reclamation districts authorizes the exercise of the taxing power. [2] The assessment of lands for that purpose is a species of taxation, and the rule that all laws authorizing the taxation of the property for public purposes are *in invitum*, and their provisions, therefore, to be strictly construed and pursued, or at least substantially so, is no less applicable to a case of an assessment of lands in reclamation districts for reclamation purposes than to laws authorizing the taxation of property for general governmental purposes. [3] Where, therefore, the provisions of a law by authority of which districts are formed for the purpose of reclaiming lands situated therein specify the manner or the method of assessing such lands for the purpose of raising funds with which to carry out the purposes of the district, such manner or method of proceeding must be observed with substantial

strictness.  A substantial departure from the method speci-
fically pointed out by the statute for raising the money for
the purposes of the district will render the assessment abor-
tive.   These are elementary propositions which apply in the
construction of the powers, duties, and obligations of all
public or *quasi*-public instrumentalities or agencies estab-
lished for the purpose of carrying out, within certain
limited subdivisions of the state, certain designated policies
of the state or of exercising certain governmental functions.

[4]   The right of the owners of lands within reclamation
districts to have the assessments levied against such lands
for the purposes of such districts made collectible and pay-
able in separate installments is, as above declared, a substan-
tial one expressly given to them by the legislature for their
benefit and convenience, and the courts would be guilty of
resorting to the very extreme of judicial legislation under
the guise of construction should they hold that the trustees
of reclamation districts are at liberty to disregard that right
whenever they see fit to do so, and so require the land
owners to pay the entire assessments at one time.

We have carefully read and considered the briefs of re-
spondent.  We find no fault with the rules of statutory
construction to which they therein refer and which they
invoke as supporting their view of the section of the Polit-
ical Code in question.  But, as must be manifest from the
views we have already expressed respecting the language of
said section, we cannot support them in their insistence
upon the application to the present case of the rules of
construction invoked by them or the cases they rely upon.
They argue that, as there is no language in the section
expressly forbidding the trustees from calling in the entire
assessment at one time, therefore, the legislature must have
intended that they should be vested with the discretion of
collecting the entire assessment at any time, if, in their
judgment, the requirements of the district justify it.   This
proposition we have already answered.  While it is true
that the section does not say to the board, "You shall not
call in the entire assessment at one time," it does say, as
we have shown, that the collection and payment of the as-
sessments *shall* be in separate installments, and this is
tantamount to the declaration that the collection of the
entire assessment shall not be compelled by the trustees at

one time.    The language necessarily excludes any other manner of collecting the assessments.

Nor is there any force in the argument of respondent that, inasmuch as the land owners must pay the entire assessment at some time, they can suffer no prejudice because the suit to foreclose or to enforce payment of the assessment is upon or for the entire assessment. Prejudice to the party so wronged must always follow from an act resulting in the invasion of any substantial right to which he is entitled under the law. In contracts, neither party has the right to forfeit the agreement before the time for the doing of the thing thereby agreed to be done has matured. No action will lie to recover on a promissory note until the debt of which it is evidence is due. If a purchaser agrees to pay for personal property by installments payable at stated intervals of time, his rights under the agreement cannot be forfeited until he has violated the conditions of payment or some other vital covenant. The same principle applies here. The district was without authority to sue for the entire assessment until there was default in the land owner to pay one of the installments for a certain specified period; but the vital proposition involved is the land owner's right to have the assessment made payable in separate installments so that it will be the more convenient for him to pay the assessment. For aught that can be said to the contrary, the defendants here might have willingly paid the assessments had they been made payable according to law. We have no right to assume that they would not have done so if the amount had been ordered payable in installments. [5] But be that as it may, we are fully persuaded that, for the reasons above given, the complaint fails to state a cause of action against the defendants—that is to say, that the action was premature or brought before a cause therefor could have accrued—and that the demurrer thereto should, therefore, have been sustained. From this it follows, of course, that, the demurrer having been overruled and the cause tried, and the evidence at the trial showing that the trustees failed to order the assessment involved herein to be collected and paid in separate installments, the motion of defendants for a nonsuit should have been granted.

While the conclusion thus arrived at is decisive of the case, there are some other points to which attention should be given, in view of possible litigation arising in the future with respect to this assessment.

2. Appellants claim that the court erred in admitting in evidence the judgment-roll in the validation suit, over the objection of defendants, that (1) No notice of the pendency of said action was offered in evidence; (2) That the court had no jurisdiction to render a judgment validating said assessment against the then owner of said lands, Lovdal Brothers Company, a corporation; (3) Conceding the validating judgment to be binding upon these defendants, still the plaintiff waived the estoppel that would otherwise have been created by the judgment by introducing evidence in support of each allegation of the complaint necessary to establish the regularity and validity of the assessment.

[6] While section 3466 of the Political Code as it read at the time the assessment in question was levied provided that a *lis pendens* should be filed in the office of the county recorder in all actions for the collection or enforcement of the payment of delinquent installments of the assessment, there was no provision, in section 3493½ of said code, authorizing actions to determine the validity of the assessments, which required that notice of the pendency of such actions should be filed. Nor was such a notice required to be filed in such actions by section 409 of the Code of Civil Procedure, which relates entirely to actions involving the title or the right of possession to real property. The validation action did not involve the title or the right of possession of real property, but merely the question of the validity of an assessment which, under section 3463 of the Political Code, as it then read, became a lien upon the property assessed from and after the filing with the county treasurer by the assessment commissioners of a list of the charges assessed against the land and prior to the time at which the validation suit could be brought. From these considerations it follows that it was not necessary to file a notice of the pendency of the action to establish the validity of the assessment.

[7] The objection that the court had no jurisdiction to adjudicate the validity of the assessment as against Lovdal Brothers Company, the then owner of the lands in

question, is based upon the contention that the summons required by the statute is not in the form of language prescribed thereby. This objection is highly technical and without substantial merit. Section 3493½ provided that, in such an action, the summons shall require the defendant or defendants "to answer the complaint within ten days after the service of the summons, if served within the state." The summons served on Lovdal Brothers Company was in the usual form of such processes and required the defendant to "answer the complaint within ten days, exclusive of the day of service after service on you of this summons, if served within the said county—if served elsewhere within thirty days." Thus it will be observed that the summons served did not direct or require the defendant to answer the complaint within ten days, *"if served within the state,"* and it is upon this omission that the objection to the summons is founded. By the summons the said defendant was informed that, if served within the county in which the action was brought, it was required to answer the complaint within ten days after such service. The certificate attached to the summons by the party making service on Lovdal Brothers Company sets forth that the summons was served on said company in Yolo County. Thus the said defendant was given, substantially as the statute required, notice of the commencement of the action, and thus the only purpose that a summons is designed to achieve was as effectually and fully accomplished as if the process had contained the precise language of section 3493½. The rule of the code is that its provisions and all proceedings under it are to be liberally construed, with a view to effect its objects and to promote justice (Code Civ. Proc., sec. 4), and this rule obviously applies as well to the provisions as to a summons as to those relating to other proceedings and processes authorized by the codes. (See *Bewick* v. *Muir,* 83 Cal. 370, [23 Pac. 389].)

In this connection we should notice another point made by appellants, which is that neither W. E. Lovdal, the grantee of the corporation of the lands involved herein, nor his executrices, ever received notice of the validation suit, and that the court below, therefore, never acquired jurisdiction to enter judgment in said action as against them. The contention is without force. The deceased,

Lovdal, purchased the property after judgment in the validation suit was rendered and entered, and, inasmuch as the effect of the judgment was to confirm or establish the validity of the lien which, *ipso facto,* attached to all the lands in the district upon the filing of the list of the charges with the county treasurer, the judgment imparted notice of such lien, and all purchasers of property in the district subject to the assessment were charged with such notice. (See *Carpenter* v. *Lewis,* 119 Cal. 18, 22, [50 Pac. 925].)

[8]   At any rate, the action in the validation suit was one *in rem,* and it was binding upon the lands assessed and, therefore, concluded all subsequent purchasers. (*Peterson* v. *Weissbein,* 80 Cal. 38, [22 Pac. 56]; *Riverside Land Co.* v. *Jensen,* 108 Cal. 146, [41 Pac. 40]; 39 Cyc. 1710.)

[9]   The claim that the plaintiff waived the estoppel created by the judgment in the validation suit by introducing evidence here in support of the issues raised in that suit requires no elaborate notice here, since, if it were true that such an objection is good as against the right to invoke an estoppel by judgment, the same would probably be obviated at the trial of any action which might be brought in the future to enforce the payment of this assessment. It may be suggested, however, that the case of *Megerle* v. *Ashe,* 33 Cal. 74, cited by the respondent as supporting the objection referred to, has been expressly overruled, so far as that proposition is concerned, by *Harding* v. *Harding,* 148 Cal. 397, [83 Pac. 434], in which it is said: "But whatever construction may be put upon *Megerle* v. *Ashe,* 33 Cal. 74, and the later case of *Hicks* v. *Lovell,* 64 Cal. 14, 22, [49 Am. Rep. 679, 27 Pac. 942], where something is said that might be construed as an approval of the statement quoted from the former one, we are satisfied that, under our system, a defendant does not waive his rights under a judgment pleaded in bar, by the mere act of also contesting the claim of the plaintiff upon the merits."

[10]   3. The plans and estimates of P. N. Ashley, engineer of the district, dated July 6, 1908, as reported to the trustees of the district, stated that the estimated cost of raising old front levees which were to be used as a part of the reclamation plan was six cents per cubic yard. The trustees of the district at that time were Messrs. H. J. Goethe, Theo. Blauth, and C. F. Silva, each of whom was the

owner of a portion of the front levee. Defendants attempted to prove by the witness, P. S. Driver, secretary and attorney for the plaintiff district, that those parties were paid ten cents per cubic yard for such levees. An objection by plaintiff that this was a collateral attack upon the warrants issued in payment for said levees was sustained and appellants urge that the ruling was erroneous.

The ruling was proper. Before the assessment could be levied under the law it was requisite that a statement or report should have been made to the supervisors by the trustees showing the plan of the proposed reclamation work and estimates of the costs thereof. This report or statement was a necessary prerequisite to the levying of the assessment and the assessment was, in turn, a necessary prerequisite to a validation suit. It follows, therefore, that the statement or report of the plan and estimated costs of the work to be done was necessarily one of the issues to be adjudicated in the validation suit. [11] The judgment in that action is *res adjudicata* as to all matters contained in the statement. The time for the urging of any objections to the statement or any other matter connected with the assessment was at the trial of that action. The Lovdal Brothers Company, although duly notified of the action, defaulted or made no appearance therein. The attempt here to impeach the validity of the warrants in question involved an attempt to attack the judgment in that action collaterally. Of course, this cannot be done, even if it be true that the warrants called for larger amounts than the estimated price of the land, as shown by the report, justified. Indeed, the question of the price per cubic yard of the land was one of fact, and that question having been determined by the trustees of the district and the supervisors of the county by finding that ten cents rather than six cents (the estimated price per cubic yard) was the proper price, and the warrants having been drawn for that amount, the validity or correctness of the warrants themselves cannot be collaterally challenged. (*Reclamation District* v. *Clark,* 155 Cal. 350, [100 Pac. 1091] ; *County of Alameda* v. *Evers,* 136 Cal. 132, [68 Pac. 475] ; *County of Santa Cruz* v. *McPherson,* 133 Cal. 282, [65 Pac. 574] ; *Victors* v. *Kelsey,* 31 Cal. App. 801, [161 Pac. 1006] ; *McBride* v. *Newlin,* 129 Cal. 36,[61 Pac. 577].)

The appellants undertake to differentiate the above-named cases from the present case in that the question involved in those cases was one of fact, while the question presented here is one of law, the contention being that the act of the trustees in purchasing their own property for the purposes of the district was illegal. But however that may be, the question whether the act of the trustees in the matter was or was not legal was, as we have pointed out, necessarily a direct issue in the validation suit and was therein adjudicated. Indeed, the sole question to be determined in that action was whether the assessment was or was not in all respects valid.

The cases of *Reclamation District* v. *Turner,* 104 Cal. 334, [37 Pac. 1038], *Reclamation District* v. *McCullah,* 124 Cal. 175, [56 Pac. 887], and *Reclamation District* v. *Birks,* 159 Cal. 233, [113 Pac. 170], cited by the appellants as supporting their position that the assessment was void because of the fact that the trustees, as owners thereof, sold to the district the levee banks referred to, were direct appeals from the judgments. The first named was an action to collect an assessment and the defendant appealed from the judgment entered against him. At the time that the action in that case was brought in the superior court there was no statute or law authorizing the validation of such assessments by a suit for that purpose in the superior court, section 3493½ of the Political Code not then being in existence. The attack upon the judgment in the Turner case was, therefore, direct. The other two cases involved actions to validate the assessments and the defendants therein appealed directly from the judgments declaring the assessments to be valid. The case at bar involves an action to collect an assessment which had, prior to the commencement of this action, been judicially declared to be valid upon evidence presumptively sufficient to support the judgment. If it be said that there is some evidence here showing the fact of the purchase of the land referred to by the trustees, the answer is that, since all presumptions are in a collateral attack to be indulged in favor of the judgment and the regularity of the proceedings leading thereto, it is to be presumed that in the validation suit there was evidence disclosing that the sale and transfer of the levee banks to the district was not only necessary and to the best interests of the district in its work of reclamation, but that

the transaction was conducted in such manner as to remove from it any aspect of illegality. There is no presumption arising from the mere fact of the transaction itself, unexplained by the circumstances by which it was initiated and consummated, that it was unfair or illegal or characterized by fraud. (*Reclamation District* v. *McCullah*, 124 Cal. 175, [56 Pac. 887] ; Morawetz on Corporations, sec. 527.)

4. It is lastly claimed that a sum amounting to nearly fifteen thousand dollars, included in the assessment of one hundred and thirty-two thousand dollars, was misappropriated and could not possibly benefit the lands of defendants.

It was alleged in the answer that the trustees of the district, in 1908, caused the front levee of the district on the bank of the Sacramento River to be cut through in order to take a dredger into the district, and that they so negligently and carelessly closed the opening made by them that, in the spring of 1909, the water of the river broke through the levee and damaged the lands of one Calvin Perkins lying adjacent to the district; that said Perkins brought suit and recovered judgment against said trustees for the sum of nine thousand three hundred and sixty dollars and costs, which judgment and costs, together with attorney's fees, were paid out of the assessment for one hundred and thirty-two thousand dollars.

The action above referred to of *Perkins* v. *Blauth et al.,* is reported in 163 Cal. 782, [127 Pac. 50]. It appears by reference thereto that while the dredging company and the engineer of the district were joined as defendants (the district itself was not so joined), the judgment was against the trustees of the district individually. It is the claim of appellants that, as the judgment in the validating action was entered October 5, 1908, and the acts of the trustees resulting in the Perkins judgment occurred thereafter, in no event could the amount of said judgment be properly paid out of the assessment under consideration.

At the trial defendants offered in evidence the judgment-roll in *Perkins* v. *Blauth et al.,* and also attempted to prove the above facts by the introduction of testimony. The court sustained objections to the introduction of said evidence, which ruling is specified as error.

[12] The ruling was correct. We cannot conceive of a more obvious proposition in connection with a case of this

character than that the misappropriation of the funds of the district by the trustees thereof cannot have the effect of invalidating the assessment by which such funds were raised. If the trustees have misused the funds of the district by paying them out for some purpose wholly foreign to the objects of the district, they are, of course, personally liable for the repayment of the moneys so used; that the act of those officials in the misappropriation of the moneys of the district has absolutely nothing to do with the matter of levying the assessment and can in no way affect the proceedings involving that duty.

For the reason first hereinabove given, the judgment is reversed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 15, 1919.

Shaw, J., Melvin, J., Wilbur, J., and Lennon, J., concurred.